**CARLYLE TOWERS CONDOMINIUM ASSOCIATION, INC.,** Vincent Rigolosi, Chryss Chryssanthou, Richard Linde, and Marsha Squires, Individually and as representative of the class of persons owning units at the Carlyle Towers Condominium, Plaintiffs,

v.

The **FEDERAL DEPOSIT INSURANCE CORPORATION,** in its capacity as receiver for Crossland Savings, FSB, Defendant.

No. 96–CV–2462 (FB).

United States District Court.
E.D. New York.

Oct. 30, 1997.

William D. Grand, Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, Woodbridge, NJ, for Plaintiffs.

Marguerite Sagatelian, Managing Attorney, FDIC Legal Services Office, by Saliann Scarpulla, New York, NY, for Defendant.

## MEMORANDUM & ORDER

BLOCK, District Judge.

Plaintiffs bring suit against the Federal Deposit Insurance Corporation ("FDIC") in its capacity as the receiver for Crossland Savings Bank, FSB ("Crossland"), which was closed by the United States Office of Thrift Supervision ("OTS") on January 24, 1992. Plaintiffs seek to hold the FDIC liable, pursuant to the Financial Institution Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, for damages pertaining to the construction of Carlyle Towers, a 370–unit condominium building (the "Towers") located in New Jersey and financed in part by Crossland. Presently before the Court is the FDIC's motion, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the complaint, as amended, for lack of subject matter jurisdiction on the ground that plaintiffs' failure to file a timely proof of claim ("claim") with the FDIC precludes judicial review of the FDIC's rejection of plaintiffs' claim.

FIRREA provides a time frame within which the creditors appearing on the books of a failed financial institution must present their claims to the FDIC. Specifically, 12 U.S.C. § 1821(d)(3)(B)(i) requires the receiver to specify, in a notice to be published and mailed to these creditors, a date "not less than 90 days after the publication of such notice" for the presentation of their claims. This date is commonly known as the "bar date," and claims received after this date "shall be disallowed" unless the claimant "did not receive notice of the appointment of the receiver in time to file such claim before such date," 12 U.S.C. § 1821(d)(5)(C)(ii)(I), and "such claim is filed in time to permit payment of such claim." 12 U.S.C.

§ 1821(d)(5)(C)(ii)(II). The FDIC has interpreted § 1821(d)(5)(C)(ii)(I) to allow for the administrative processing by the FDIC of claims which do not accrue or are not discoverable until after the bar date, but has applied a 90–day filing requirement for such "post-bar date" claims. Plaintiffs contend that there is no statutory warrant for such a time requirement, and their post-bar date claim must therefore be allowed so long as it was filed in time to permit payment. The Court disagrees, and accordingly grants the FDIC's motion to dismiss plaintiffs' untimely claim.

## I. BACKGROUND

Plaintiffs bring suit for damages relating to alleged defects in the design and construction of the Towers. Among the defects alleged in their amended complaint are: "water infiltration, ... [problems in] the domestic hot water supply, the HVAC and smoke evacuation systems, sink holes ... sinking floor tile, freezing pipes, disruptive elevator noises ... [and] missing fire stopping in chaseways...." Amended Complaint at ¶ 29. Plaintiffs seek to hold Crossland and, perforce, the FDIC, liable for these defects because in April 1991, Crossland entered into a certain agreement with the original developers of the Towers, apparently after the developers failed to make payments on financing supplied by Crossland, whereby Crossland succeeded to the Towers' developers' rights and liabilities in respect to that building project.

The FDIC established a May 8, 1992 bar date. Plaintiffs allege in their amended complaint that their claim was not filed by that date because the defects in construction and design underlying their lawsuit were not discovered until after that date. By letter dated August 21, 1995, the FDIC wrote to plaintiffs that "[t]he Receiver has discovered that you may have a [post-bar date] claim." Tracking the language of the statutory provision for the consideration of post-bar date claims, the letter instructed the claimants that "the Receiver may consider a claim filed after the bar date if it is shown that the claimant did not receive notice of the appointment of the Receiver in time to file such

claim before the bar date, and such claim is filed in time to permit payment of the claim." The letter also stated, however, that the claim had to be received by the receiver "no later than 90 days from the date or postmark of this letter, whichever is later." The contents of the letter, including the 90–day time constraint, derived from one of a series of form letters which the FDIC characterizes as its "internal manual procedures." Plaintiffs did not submit their claim until February 6, 1996, and offer no excuse why they could not have done so within the 90–day period established by the FDIC. By letter dated March 19, 1996, the FDIC rejected plaintiffs' claim as untimely. This lawsuit followed.

## II. DISCUSSION

### A. Standard Applied to Motion to Dismiss for Lack of Subject Matter Jurisdiction

■ All claims cognizable under FIRREA must be administratively reviewed as a jurisdictional precondition to judicial relief. 12 U.S.C. § 1821(d)(13)(D); *see Resolution Trust Corp. v. Elman,* 949 F.2d 624, 627 (2d Cir.1991); *Heno v. Federal Deposit Ins. Corp.,* 20 F.3d 1204, 1208–10 (1st Cir.1994). Plaintiffs contend that they need not here exhaust the FDIC's administrative review process for the following reasons: (1) post-bar date claims are not embraced by FIRREA; (2) neither the FDIC's administrative review of post-bar date claims nor its imposition of a 90–day limit on such claims has been memorialized by regulation; and (3) the FDIC's letter notice was ambiguous. In any event, plaintiffs contend that even if their post-bar date claim is subject to administrative review, the time limitation imposed by the FDIC is impermissible.

■ It is well settled that "the burden of proving jurisdiction is on the party asserting it." *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996) (quoting *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994)). "When deciding whether to dismiss for lack of subject matter jurisdiction, the court must accept the material allegations of the complaint as true." *Djordjevic v. Postmaster General, U.S. Postal Serv.,* 911 F.Supp. 72, 74 (E.D.N.Y.1995) (quoting *At-*

*lantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992)). However, unlike a Rule 12(b)(6) motion, the Court may consider "any material in the record," in conjunction with the complaint, when deciding a motion under Rule 12(b)(1). *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 108 (2d Cir.1997). Although the FDIC argues that plaintiffs' claims arose prior to the bar date, it has submitted no affidavits or evidence to support this contention. The Court will therefore accept as true for purposes of the motion that plaintiffs' claims accrued after the bar date.

### B. Plaintiffs' Claim is Subject to Administrative Review

■ In *Stamm v. Paul,* 121 F.3d 635 (11th Cir.1997), the Eleventh Circuit Court of Appeals specifically held that post-bar date claims are not exempted from administrative review. There, the precise issue was whether such claims are cognizable under § 1821(d)(5)(C)(ii), and hence subject to administrative review, even if the claimant had notice of the appointment of the receiver before the expiration of the initial bar date. As previously noted, § 1821(d)(5)(C)(ii) provides that post-bar date claims may be allowed by the agency if "the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date." § 1821(d)(5)(C)(ii)(I). The *Stamm* court gave its approbation to the interpretation by the Resolution Trust Corporation ("RTC"), which agency Congress has empowered (in addition to the FDIC) to administer FIRREA's claim procedures, 12 U.S.C. § 1441a(b)(4), that such post-bar date claims are cognizable because the phrase "in time to file such claim" means "at a time when [the claimant] *could* have filed that claim." *Id.* at 641 (emphasis added). The *Stamm* court agreed with the RTC, therefore, that as cognizable claims, they are subject to administrative review.

In so holding, the Eleventh Circuit registered its agreement with the First Circuit, which had previously come to the same conclusion in respect to the FDIC's identical interpretation of § 1821(d)(5)(C)(ii). *Heno v.*

*Federal Deposit Ins. Corp.,* 20 F.3d 1204, 1208–10 (1st Cir.1994). Notably, the *Stamm* and *Heno* courts gave their approbation to the agencies' interpretations of FIRREA despite the fact that neither the RTC nor the FDIC had issued a regulation embodying their interpretation of § 1821(d)(5)(C)(ii).

The *Stamm* and *Heno* courts applied the broad-based principle of administrative law that when reviewing an agency's construction of a statute which does not "directly [speak] to the precise question at issue," the court need only determine "whether the agency's answer is based on a permissible construction of the statute." *Chevron v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). As the Supreme Court instructs in *Chevron,* "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* at 844, 104 S.Ct. at 2782. Moreover, "[i]n determining whether a construction is permissible, '[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted ... or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.' " *Rust v. Sullivan,* 500 U.S. 173, 184, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991) (quoting *Chevron,* 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11). The *Rust* Court emphasized that an agency's interpretation is permissible so long as it "reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' expressed intent." *Rust,* 500 U.S. at 184, 111 S.Ct. at 1767. The Eleventh Circuit therefore concluded:

> We concur with the First Circuit's conclusion that although the RTC's "proposed interpretation is far from the most natural reading of subsection 1821(d)(5)(C)(ii) itself, we cannot say that it [fails to] represent a 'permissible' reading of an ambiguous provision viewed in the broader context of the statute as a whole under the deferential standard required by [*Chevron*]."

*Stamm,* 121 F.3d at 641 (quoting *Heno,* 20 F.3d at 1209).

■ Furthermore, the Court notes that neither the *Stamm* nor the *Heno* court applied any less deference under *Chevron* because more than one agency interprets FIRREA. Nevertheless, the Court is mindful of the Second Circuit's instruction that, when a statute is interpreted by more than one agency, any one agency's statutory interpretation is not necessarily entitled to full *Chevron* deference. *See 1185 Avenue of the Americas Assocs. v. Resolution Trust Corp.*, 22 F.3d 494, 497 (2d Cir.1994) ("[W]here ... Congress has entrusted more than one federal agency with the administration of a statute ... a reviewing court does not ... owe as much deference as it might otherwise give if the interpretation were made by a single agency similarly entrusted with powers of interpretation.") (quoting *Lieberman v. FTC*, 771 F.2d 32, 37 (2d Cir.1985)); *see also Cousin v. Office of Thrift Supervision*, 73 F.3d 1242, 1249 (2d Cir.1996). Despite this general rule, however, the fact that the RTC and FDIC—the only two agencies that administer § 1821—have manifested their agreement that all post-bar date claims must be administratively exhausted, compels substantial deference to their collective interpretation.

■ Although the FDIC presumably could have memorialized its interpretation by regulation pursuant to the regulatory powers conferred upon it by Congress, *see* 12 U.S.C. § 1821(d)(4), it need not have done so. The Supreme Court has held that deference should be accorded to the FDIC's established administrative practices, as manifested here by its internal manual procedures, even if the FDIC had not posited its statutory interpretation as a "specific regulation." *FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 439, 106 S.Ct. 1931, 1938–39, 90 L.Ed.2d 428 (1986); *see Heno*, 20 F.3d at 1209; *see also Wasserman v. Glickman*, 882 F.Supp. 288, 294 (E.D.N.Y.1995) ("An agency's reasonable interpretation of a statute, even though not reduced to a regulation, is entitled to judicial deference."). *See Heno*, 20 F.3d at 1210–14 (appending the FDIC's internal manual procedures to its opinion).

The Court finds persuasive the rationale of *Stamm* and *Heno,* and concludes that plain-

tiffs were required to exhaust the FDIC's administrative remedies, as they attempted to do (albeit after the 90–day limit), prior to seeking judicial relief. Although the Second Circuit has not yet had the occasion to consider this issue, the Court believes that the Second Circuit would concur with its sister circuits that post-bar date claims are cognizable under FIRREA, and therefore must be administratively exhausted.

Plaintiffs' reliance on *Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269 (10th Cir.1994), to support its contention that post-bar date claims need not be administratively exhausted is misplaced. There, the claims were against the receiver itself for alleged misconduct in its administration of the failed financial institution. The Tenth Circuit held, under its reading of FIRREA, that claims against the receiver were not administratively reviewable by the RTC and plaintiffs could therefore seek judicial relief without first exhausting the administrative process. *Id.* at 1274. Moreover, the Court notes that the circuit courts of appeal that have addressed the exhaustion issue in the context of post-bar date claims have either disagreed with or distinguished the *Homeland Stores* decision. *See Stamm,* 121 F.3d 635, 639 (11th Cir.1997); *Heno,* 20 F.3d 1204, 1207 (1st Cir.1994); *Rosa v. Resolution Trust Corp.,* 938 F.2d 383, 391 (3d Cir.1991).

## C. The FDIC's Imposition of the 90–Day Time Constraint on Plaintiffs' Post–Bar Date Claim

■ Having determined that plaintiffs were required to engage in, and exhaust, the administrative claims process, the issue remains whether the FDIC has permissibly interpreted FIRREA to permit it to establish a 90–day limit on the filing of post-bar date claims. Neither the parties nor the Court are aware of any decision by any court which has addressed this issue.

Plaintiffs contend that there is no statutory warrant for any time limitation on their post-bar date claim other than the requirement contained in § 1821(d)(5)(C)(ii) that the claim be filed "in time to permit payment." The FDIC disagrees, and points to § 1821(d)(3)(C), which states:

The receiver shall mail a notice similar to the notice published under subparagraph (B)(i) [the initial bar date notice] at the time of such publication to any creditor shown on the institution's books—

> (i) at the creditor's last address appearing in such books; or

> (ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

The FDIC and RTC's agreement that all post-bar date claims must be submitted for administrative review necessarily triggers the need to determine the applicability and appropriateness of the "similar" notice provision of § 1821(d)(3)(C).[1] On its face, that section places an obligation on the FDIC to give notice to new-found creditors within 30 days after the FDIC discovers their existence and to require that such creditors file their claims with the FDIC within a time frame "similar" to the period of time established for the initial bar date. It is at once apparent that claims may be discovered by the FDIC subsequent, as well as prior, to the bar date, which further reinforces the reasonableness of the FDIC and RTC's interpretation that post-bar date claims are subject to administrative review. It logically also supports the FDIC's related interpretation that "similar" notice cannot mean the same original bar date notice, but must simply provide all new-found creditors, including post-bar date creditors, with a fresh minimum 90–day period within which to file their claims.

Subjecting post-bar date claims to administrative review and imposing a 90–day time limit for the filing of such claims is obviously consistent with FIRREA's object and policy of "optimiz[ing] prospects for expeditious resolution of . . . claims against failed banks," *Heno*, 20 F.3d at 1209. To accept plaintiffs' interpretation that post-bar date claims are permissible so long as they are filed "in time to permit payment of such claims" would provide post-bar date claimants with a more lenient administrative claims process than that accorded to those with long-standing claims in existence at the time the failed financial institution was placed in receivership. Such an interpretation would run contrary to the well-established rule of statutory construction that provisions should be construed to promote consistency within the statute as a whole. "Over and over we have stressed that '[i]n expounding a statute, we must not be guided by a single sentence . . . but look to the provisions of the whole law, and to its object and policy.'" *United States Nat'l Bank of Oregon v. Independent Ins. Agents*, 508 U.S. 439, 455, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) (quoting *United States v. Heirs of Boisdore*, 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1850)). It would be more logical to interpret the "filed in time to permit payment of such claim" restriction as a recognition by Congress that there may not be sufficient funds to pay post-bar date claims because all the assets of the failed financial institution may have previously been paid to pre-bar date claimants.

The Court therefore concludes that, in light of the *Chevron* deference properly accorded to the FDIC's construction of FIRREA, requiring that post-bar date claims be subject to administrative review and providing that such claims be received by the receiver no later than 90 days from the date or postmark of the letter notifying the creditor of the discovered claim are permissible interpretations of the affected statutory provisions. In so holding, the Court notes that, as is the case with the FDIC and RTC's interpretation regarding the administrative review of postbar date claims, the FDIC's interpretation of the notice requirement also need not have been established by regulation. Finally, the Court rejects plaintiffs' contention that the letter notice was ambiguous since the letter clearly put plaintiffs on notice of the need to file their claim within the specified time period.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that plaintiffs' proof of claim, submitted to the receiver after the expiration of the 90–day period established by the August 21, 1995 letter, was not timely filed. According-

---

1. The record does not indicate whether the RTC has interpreted the notice provision.

ly, the FDIC's motion to dismiss for lack of subject matter jurisdiction is granted, and the amended complaint is dismissed.

**SO ORDERED.**