CARLYLE TOWERS CONDOMINIUM ASSOCIATION, INC., Vincent Rigolosi, Chryss Chryssanthou, Richard Linde and Marsha Squires, individually and as representatives of the class of persons owning units at the Carlyle Towers Condominium, Plaintiffs–Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as receiver for Crossland Savings, FSB, Defendant–Appellee.

Docket No. 98–6001.

United States Court of Appeals, Second Circuit.

Argued Nov. 18, 1998.

Decided March 12, 1999.

William D. Grand, Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP, Woodbridge, NJ, for Plaintiffs–Appellants.

Sheila Kraft Budoff, Federal Deposit Insurance Corporation, Washington, DC (Ann S. DuRoss, Colleen J. Boles, Federal Deposit Insurance Corporation, Washington, DC, of counsel), for Defendant–Appellee.

Before: MINER, CALABRESI, and SACK, Circuit Judges.

MINER, Circuit Judge:

Plaintiffs-appellants the Carlyle Towers Condominium Association, Inc., Vincent Rigolosi, Chryss Chryssanthou, Richard Linde, and Marsha Squires, individually and as representatives of the class of persons owning units at the Carlyle Towers Condominium (collectively, "the Association") appeal from a judgment entered in the United States District Court for the Eastern District of New York (Block, *J.*) dismissing their claim for money damages against defendant-appellee Federal Deposit Insurance Corporation ("FDIC"). The district court entered judgment after granting a motion by the FDIC to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. The court granted the motion after finding that the Association's claim was subject to administrative review under the Financial Institution Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") § 212(5), as amended, 12 U.S.C. § 1821(d) (1994), and that this claim should have been filed with the FDIC within 90 days of receipt of a notice letter. Because the Association had not submitted its claim to the FDIC within the allotted 90 days, the court found that the Association failed to exhaust administrative remedies. The court concluded that the failure to exhaust deprived it of subject matter jurisdiction to adjudicate the Association's claim and accordingly dismissed the action.

For the reasons that follow, we vacate the judgment and remand for further proceedings.

## BACKGROUND

In May of 1988, co-developers Cross Cliff Corporation and Carlyle Associates of Cliffside Park, operating jointly under the name of Cliffside Park Associates, L.P. ("CPA"), established the Carlyle Towers Condominium (the "Condominium") pursuant to an offering statement and deed. In April of 1991, Crossland Savings, FSB ("Old Crossland"), the parent corporation of Cross Cliff Corporation, succeeded CPA as sponsor, owner and developer of the Condominium by virtue of a conveyance agreement.

On January 24, 1992, the Office of Thrift Supervision declared Old Crossland to be financially unsound and appointed the FDIC as its receiver (the "Receiver"). On the same day, a new banking institution, Crossland Federal Savings Bank ("New Crossland"), was chartered, and the FDIC was appointed as its conservator. Also on the same day, the FDIC, as Receiver for Old Crossland, transferred certain assets and liabilities, including the Condominium, to New Crossland, which became the sponsor, owner and developer of the Condominium. The transfer was effected pursuant to a "Fourth Amendment To The Offering Plan." The FDIC concluded its duties as conservator of New Crossland in August of 1993.

After it was appointed Receiver for Old Crossland, the FDIC published a notice for three consecutive months, pursuant to 12 U.S.C. § 1821(d)(3)(B)(i), stating that the creditors of Old Crossland were required to present their claims to the FDIC by May 8, 1992 (the "bar date"). The notice further provided that claims presented after that date may be time barred.

On June 23, 1995, the Association filed an action in New Jersey Superior Court (the "Underlying Action") against fifty-three defendants, including Old Crossland, New Crossland, CPA, Carlyle Associates, and Cross Cliff Corporation. The Association alleged that unit owners at the Condominium became aware of certain defects in their residences and in common areas in the Condominium sometime after May 8, 1992. A broad array of problems was recounted in the complaint, ranging from water seepage to freezing pipes and disturbingly loud elevators. Damages were sought as a remedy for the faulty design and construction of the Condominium units. The FDIC was not named as a defendant in the action.

Approximately two months after the filing of the Underlying Action, on August 21, 1995, the FDIC sent the Association a letter, pursuant to 12 U.S.C. § 1821(d)(3)(C)(ii), entitled "Notice To Discovered Creditor or Claimant Proof of Claim" (the "Notice Letter"). The Notice Letter advised the Association that the FDIC had been appointed Receiver of Old Crossland and had established May 8, 1992 as the bar date. Tracking the language of 12 U.S.C. § 1821(d)(5)(C), the letter continued: the Receiver "must disallow claims ... not filed by the bar date," except that claims filed after the bar date may be considered *"if it is shown that the claimant did not receive notice of the appointment of the Receiver in time to file such claim before the bar date,* and such claim is filed in time to permit payment of the claim." (emphasis added)

The letter stated that claims falling within the exception must be filed with the FDIC within 90 days of the date or postmark of the Notice Letter, and that it was within the Receiver's sole discretion to consider such claims. The letter explained that the recipient could file a claim by completing and returning the enclosed Proof of Claim Form *together with any information forming the foundation of the claim.* Such supplemental information should include "a written statement specifying any facts or circumstances demonstrating that [the recipient] did not have knowledge of the appointment of the Receiver in time to file [its] claim by the bar

date" if the recipient sought to fit within the exception. The letter concluded with the name and telephone number of a "Liquidation Specialist" at the FDIC to answer any of the recipient's questions.

After receiving the Notice Letter, counsel for the Association asserts that he attempted to clarify the FDIC's authority by analyzing the statute. After examining section 1821(d)(5)(C), counsel was satisfied that the letter was inapplicable to the Association's claim because the Association had knowledge of the appointment of the Receiver. Relying on 12 U.S.C. § 1821(d)(5)(C)(ii)(II), he was of the opinion that the Association need only file its claim "in time to permit payment of such claim," and therefore that the 90–day deadline imposed in the letter was inapplicable and contradictory to the statute. Counsel determined that the FDIC had not promulgated regulations to explain the claims procedure and was therefore satisfied that the statutory language set forth the parameters for administrative review.

In accordance with the opinion of counsel, the Association did not file a proof of claim with the FDIC within the allotted 90 days. The Association also justifies its failure to file a timely proof of claim with the FDIC because it believed that the Fourth Amendment to the Offering Plan provided that New Crossland, and not the FDIC, had assumed all the liabilities of Old Crossland, including those related to the Condominium.

Unbeknownst to the Association (and unexplained by the Notice Letter), the FDIC had adopted a procedure whereby it "permit[ted] consideration of claims [that] do not accrue or are not discoverable until after the bar date, even if the claimant had prior knowledge of the appointment of the receiver." The FDIC states that the Association's claim would have received full consideration had it been filed within the 90–day period set forth in the Notice Letter.

In November of 1995, New Crossland filed a third-party claim against the FDIC in the Underlying Action, claiming that the FDIC had assumed the liabilities of Old Crossland and thus that New Crossland was entitled to indemnification for any liability it incurred related to the Condominium. Additionally, in

December of 1995, the Association claims that it became aware of an action pending in the Eastern District of New York in which New Crossland contended that the FDIC retained the Condominium-related liabilities of Old Crossland. It was the FDIC's position in both the Underlying Action and the Eastern District action that New Crossland had assumed the liabilities related to the Condominium. The Association represents that these discoveries first made it aware that there was a dispute over who was responsible for the Condominium-related liabilities of Old Crossland. On February 6, 1996, the Association filed a proof of claim with the FDIC.

The FDIC responded in a letter (the "Denial Letter") dated March 19, 1996. The FDIC disallowed the Association's claim, articulating the following basis for denial:

> [T]he Receiver must disallow claims which are not filed by the bar date, *except* the Receiver may consider a claim filed after the bar date if it is shown that the claimant did not receive notice of the appointment of the Receiver in time to file such claim before the bar date, and such claim is filed in time to permit payment of the claim.... *The Receiver rejects your request to file a claim after the bar date as your request does not establish that you did not have notice of the appointment of the Receiver in time to file your claim by the bar date.*

(second emphasis added).

The Association then initiated the action giving rise to this appeal against the FDIC in the Eastern District of New York on May 16, 1996, incorporating by reference the amended complaint filed in the Underlying Action. In September of 1996, the FDIC moved to dismiss the action for lack of subject matter jurisdiction, arguing that the Association's claim was a pre-receivership claim and thus untimely under the bar date. The FDIC argued in the alternative that if the claim were a post-bar date claim, it was untimely under the 90-day deadline set forth in the Notice Letter.

In response, the Association raised several contentions. Primarily, it argued that the FDIC's requirement that it file its claim for administrative review within 90 days of the Notice Letter was unreasonable. It argued that the FIRREA did not require administrative review of claims that arose after the bar date, and even if it did require administrative review for such claims, there was no statutory warrant for a time limit other than the requirement in 12 U.S.C. § 1821(d)(5)(C)(ii)(II) that the claims be filed "in time to permit payment of such claim." Further, the Association argued that it had not received constitutionally adequate notice, especially in light of the FDIC's failure to promulgate regulations addressing the administration of post-bar date claims. The Association also contended that the Notice Letter was misleading for two reasons: first, it did not explain that post-bar date claimants could submit a proof of claim even if they had knowledge of the appointment of the Receiver; and second, it did not disclose New Crossland's contention that the FDIC had assumed the Condominium's liabilities.

The district court granted the FDIC's motion and dismissed the action for lack of subject matter jurisdiction. *See Carlyle Towers Condo. Ass'n v. FDIC*, 982 F.Supp. 181, 183, 186–87 (E.D.N.Y.1997) (citing 12 U.S.C. § 1821(d)(13)(D)). The court accepted as true, in the absence of contrary evidence, the Association's contention that its claim had arisen after the bar date. It then determined that claims accruing after the bar date are nonetheless subject to FDIC administrative review under the applicable FDIC procedures and that these procedures were a permissible interpretation of the FDIC's statutory mandate. *See id.* at 184–85 (relying on the Eleventh Circuit's holding in *Stamm v. Paul*, 121 F.3d 635 (11th Cir.1997) and the First Circuit's holding in *Heno v. FDIC*, 20 F.3d 1204 (1st Cir.1994)). It also found that the FDIC's failure to memorialize its interpretation in a regulation did not preclude enforcement of the requirement. *See id.* at 185.

The district court rejected the Association's argument that there was no basis for the imposition of a 90-day filing period. It noted the language in 12 U.S.C. § 1821(d)(3)(C), which provides that, for creditors discovered after the announcement of the bar date, "[t]he receiver shall mail a

notice similar to [the initial bar date notice]." *See id.* at 185–86. The court found reasonable the FDIC's interpretation that such "similar" notice required a new 90–day period for claimants to file their claims. *See id.* at 186. It reasoned that such an interpretation was consistent with the FIRREA's scheme for administrative review, because to fail to impose a time limit in which post-bar date claimants could assert their claims would favor them over pre-bar date claimants, who had to file their claims within a stated period. *See id.* Finally, the court determined that the Notice Letter "clearly put plaintiffs on notice of the need to file their claim within the specified time period," *id.,* and therefore rejected the Association's contention that the Notice Letter was ambiguous. Having found that the Association failed to exhaust administrative remedies, the district court dismissed the Association's claim for lack of subject matter jurisdiction. This appeal followed.

## DISCUSSION

█ We review *de novo* a district court's grant of a motion to dismiss for lack of subject matter jurisdiction where the only issue is the legal sufficiency of undisputed facts. *See Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997); *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996).

### I. Overview of the Claims Process

FIRREA contains an exhaustion requirement applicable to claims against the assets of a failed depository institution in FDIC receivership. *See* 12 U.S.C. § 1821(d)(5) (Procedures for determination of claims); *id.* § 1821(d)(13)(D) (Limitation on judicial review). A claimant may obtain judicial review of the FDIC's claim determination if the claimant files a claim with the FDIC, receives a "disallowance" of the claim, and then files suit in a district court within 60 days of the FDIC's disallowance. *See id.* §§ 1821(d)(5)(A), (6)(A).

For claimants whose names appear on the books of a failed financial institution, the statute sets forth a relatively straightforward administrative review process. Upon being appointed receiver, the FIRREA requires that the FDIC "promptly publish a notice to ... creditors" that they must present their claims to the FDIC, together with proof, within a stated period (not less than 90 days) of the publication of the notice (the "bar date"). *Id.* § 1821(d)(3)(B)(i). The FDIC must also mail a notice containing the same information to the creditor's last address appearing on the books of the failed financial institution. *See id.* § 1821(d)(3)(C). The creditor may then file a claim with the FDIC by the bar date and will receive a determination within 180 days (or a longer period agreed to by the claimant and the FDIC). *See id.* § 1821(d)(5)(A).[1] If the claim is disallowed, the creditor may undertake an administrative appeal of the disallowance or file suit in a district court within 60 days. *See id.* § 1821(d)(6)(A).

For claimants whose names do not appear on the books of a failed financial institution, however, the statute is somewhat less precise. Within 30 days of discovering the "name and address of a claimant not appearing on the institution's books," the FDIC must mail to the newly discovered creditor a notice "similar" to the notice published pursuant to subsection (3)(B)(i), *see supra. Id.* § 1821(d)(3)(C). The FDIC has interpreted the requirement of "similar" notice to provide a 90–day period for creditors discovered after the bar date to file their claims.

The FIRREA also limits claims that may be allowed if filed after the bar date. "[C]laims filed after the [bar] date ... shall be disallowed and such disallowance shall be final" except that the receiver may allow the claim if

(I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such [bar] date; and

(II) such claim is filed in time to permit payment of such claim.

**1.** If the FDIC does not send notice of allowance or disallowance within 180 days (or some longer period agreed to by the FDIC and the claimant) of the filing of a claim, the claimant may proceed with judicial action or administrative appeal. *See id.* §§ 1821(5)(A)(i), (ii), (6)(A)(i).

12 U.S.C. § 1821(d)(5)(C). On its face, subsection (d)(5)(C) prohibits the FDIC from allowing a claim against an institution in FDIC receivership if the claim is filed after the bar date and the claimant had notice of the appointment of the receiver.

This interpretation creates tension with subsection (d)(3)(C)(ii) (notice provision for newly discovered creditors) and subsection (d)(13)(D)(ii) (limitation on judicial review). That is, subsection (d)(3)(C)(ii) requires the FDIC to send a notice to claimants not appearing on the failed institution's books within 30 days of discovery to inform them of the claims process. If these claimants are first discovered (or the claim first arises) after the bar date, and the claimant had knowledge of the appointment of the receiver, then sending the notice would essentially be meaningless because the FDIC would have no authority, under subsection (d)(5)(C), to allow the claim. Moreover, subsection (d)(13)(D) precludes a claimant from filing suit in the district court without first exhausting the administrative procedure.

It was to resolve this tension that the FDIC adopted the procedures at issue in this case. These procedures require administrative review of post-bar date claims but allow consideration of the merits of claims even when the claimant had knowledge of the appointment of the receiver. See Stamm v. Paul, 121 F.3d 635, 641 (11th Cir.1997); Heno v. FDIC, 20 F.3d 1204, 1209, 1210–14 (1st Cir.1994) (appending FDIC internal manual procedures). This latter interpretation, although difficult to reconcile with the plain language of the statute, affords late-filing claimants a forum in which their claims might be heard and thus seemingly expands the administrative review available to claimants.[2]

## II. Subject Matter Jurisdiction

 The district court found that the Association had not timely filed its claim with the FDIC and dismissed the Association's claim for lack of subject matter jurisdiction.

See Carlyle Towers Condo. Ass'n, 982 F.Supp. at 186–87. In so doing, the court implicitly held that the FDIC's requirement of filing within the 90–day period set forth in the Notice Letter is a jurisdictional requirement. We believe that this premise does not withstand analysis.

 Federal district courts and courts of appeals, of course, have only the jurisdiction granted to them by Congress. See, e.g., Keene Corp. v. United States, 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Servs., Ltd., 156 F.3d 432, 435 (2d Cir.1998). Thus, it is within the constitutional power of Congress to deprive federal courts of jurisdiction to hear certain types of cases. See, e.g., Keene Corp., 508 U.S. at 207, 113 S.Ct. 2035; Members for a Better Union v. Bevona, 152 F.3d 58, 61 (2d Cir.1998). However, courts will not infer congressional intent to limit their jurisdiction; rather, there is a presumption in favor of judicial review of an agency decision. See Block v. Community Nutrition Inst., 467 U.S. 340, 349, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984). The presumption may be rebutted only by "clear and convincing evidence" that Congress intended to preclude review. See Board of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 44, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991); Block, 467 U.S. at 350–51, 104 S.Ct. 2450. The Supreme Court has explained that the "clear and convincing evidence" standard in this context is not a strict evidentiary burden but may be met by a "congressional intent to preclude judicial review [that] is 'fairly discernible' in the detail of the legislative scheme." Block, 467 U.S. at 351, 104 S.Ct. 2450 (quoting Data Processing Serv. v. Camp, 397 U.S. 150, 156, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). The presumption in favor of judicial review will control where a "substantial doubt about . . . congressional intent exists." Id.

In applying these principles to the timely filing requirement in the present case, we are

---

**2.** The reasonableness of the FDIC's interpretations is not presently before us. We note, however, that three circuit courts have ruled that the FDIC's interpretations are permissible. See

FDIC v. Scott, 125 F.3d 254, 259 (5th Cir.1997); Stamm, 121 F.3d at 640–42; Heno, 20 F.3d at 1208–09.

guided by *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). In *Zipes,* the Supreme Court examined whether filing a timely charge of discrimination with the EEOC under Title VII was "a jurisdictional prerequisite to suit in a federal court, [or] a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* at 393, 102 S.Ct. 1127. The Court looked to "the structure of [the statute], the congressional policy underlying it, and the reasoning of [precedent] cases" to make this determination. *Id.* The rule in *Zipes* has been extended to cover suits against the government. *See Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (holding that timely filing requirement is subject to equitable tolling regardless of whether the defendant is the United States).

### A. Statutory Structure

Review of the FIRREA's structure leaves us with a "substantial doubt" that Congress intended to make timely filing with the FDIC a jurisdictional barrier for claimants whose claims accrue after the bar date and who have knowledge of the appointment of the receiver. Whereas it is relatively clear that Congress intended claims to be presented for administrative review as a jurisdictional prerequisite to filing suit in a district court, it is far less clear that a claimant who submits an untimely claim and receives a disallowance is jurisdictionally barred from proceeding in district court.

We begin with section 1821(d)(13)(D), the FIRREA provision that directly addresses district court jurisdiction. Section 1821(d)(13)(D) reads as follows:

3. The RTC ceased operations on December 31, 1995 and was succeeded by the FDIC. *See FDIC v. Barton,* 96 F.3d 128, 131 n. 1 (5th Cir.1996) (citing 12 U.S.C. § 1441a(m)(1) (1995 Supp.)).

4. § 1821. Insurance funds; conservatorship and receivership powers of Corporation
 ....
 (d) Powers and duties of Corporation as conservator or receiver
 ....
 (3) Authority of receiver to determine claims
 ....

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

 (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

 (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

The crux of the matter, then, is what the subsection "otherwise provides." We think it clear that the reference to "subsection" refers to the entirety of § 1821(d). *See Marquis v. FDIC,* 965 F.2d 1148, 1153 (1st Cir. 1992). Further, we have previously held that section 1821(d)(13)(D), when read in conjunction with the rest of section 1821(d), creates a requirement that all claims must be presented to the FDIC before a claimant may seek judicial review. *See Resolution Trust Corp. v. Elman,* 949 F.2d 624, 627 (2d Cir.1991) ("[T]he statute means just what it says, and, accordingly ... a claimant must first present its case to the RTC under the administrative procedure erected by FIRREA before seeking relief in the federal courts.") [3]; *Circle Indus. v. City Fed. Sav. Bank,* 931 F.2d 7, 8 (2d Cir.1991) (per curiam).

Although the FIRREA makes exhaustion a jurisdictional requirement, it does not necessarily follow that compliance with time limits imposed by the FDIC have the same force. The subsection that empowers the FDIC to create a filing period for creditors discovered after the bar date is entitled "Mailing required." *See* 12 U.S.C. § 1821(d)(3)(C)(ii).[4]

(B) Notice Requirements
The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall—
 (i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and
 (ii) republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).

This provision contains no reference to jurisdiction, nor to the consequences of a failure to file within the time limits established by the FDIC. *See Zipes,* 455 U.S. at 393–94, 102 S.Ct. 1127 (finding that timely filing was not a jurisdictional requirement where "[t]he provision specifying the time for filing charges with the EEOC appears as an entirely separate provision, and it does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts"). Indeed, paragraph (3)(C)(ii) focuses more on the FDIC's responsibilities than on those of potential claimants. Moreover, in contrast to the provision that the Supreme Court addressed in *Zipes,* section 2000e–5(e) of Title 42, the notice provision for newly discovered creditors does not even establish a time limit within which claims must be filed with the FDIC. *Compare Zipes,* 455 U.S. at 394 n. 10, 102 S.Ct. 1127 (quoting provision for 180–day filing period of § 2000e–5(e)) *with* 12 U.S.C. § 1821(d)(3)(C) (requiring FDIC to mail notice "similar" to that under subsection (d)(3)(B), which provides a period "not less than 90 days").

The subsection that attaches consequences to noncompliance with the filing periods is section 1821(d)(5)(C) (as set forth *supra* [page 305]), which provides that claims filed after the bar date [5] shall "be disallowed and such disallowance shall be final," with certain exceptions. Once again, this provision does not speak in the language of jurisdiction. The phrase "such disallowance shall be final" supports the notion that a disallowance under section 1821(d)(5)(C) shall be a final agency action, and therefore ripe for district court adjudication. *See, e.g.,* 2 Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 15.11, at 355 (3d ed.

1994) ("Courts have long held that only 'final agency action' is reviewable.").

Section 1821(d)(6)(A) is the provision that grants jurisdiction to district courts to entertain suits from claimants who have exhausted the administrative process. It provides that

[b]efore the end of the 60–day period beginning on the earlier of—

(i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

(ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),

the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim ... in the district or territorial court of the United States [in a specified venue] (and such court shall have jurisdiction to hear such claim).

In other words, after a disallowance by the FDIC, the claimant may bring suit in the appropriate district court. In contrast to the distinction made by the Third Circuit in *Althouse v. Resolution Trust Corp.,* 969 F.2d 1544, 1546 (3d Cir.1992),[6] we do not believe that Congress intended to differentiate between claims disallowed for untimely filing and claims disallowed for other reasons by its reference to "disallowance of [a] claim *pursuant to paragraph (5)(A)(i).*" 12 U.S.C. § 1821(d)(6)(A)(ii) (emphasis added).

Paragraph (5)(A)(i) is a general provision for determination of claims—it is, in fact, captioned "Determination period / In general"—and merely sets forth the time period within which the FDIC may allow or disallow a claim. Other subparagraphs within paragraph (5) establish the substantive grounds

(C) Mailing required

The receiver shall mail a notice similar to the notice published under subparagraph (B)(i) at the time of such publication to any creditor shown on the institution's books—

(i) at the creditor's last address appearing in such books; or

(ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

5. Section 1821(d)(3)(C)(i) refers only to timeliness with respect to the bar date, not timeliness

under the filing period established for claimants discovered after the bar date. Our analysis is premised on the proposition that the Association's claim arose after the bar date, and that they were filed after the bar date as well as after the expiration of the filing period specified in the Notice Letter.

6. In *Althouse,* the court addressed a claim that accrued before the bar date but was not filed until after the bar date. *See id.* at 1545.

on which the receiver may allow or disallow claims: subparagraph (B) states that the FDIC "shall allow any claim ... proved to the satisfaction of the receiver"; subparagraph (D) grants the receiver the authority to "disallow any portion of any claim ... which is not proved to the satisfaction of the receiver." Thus, paragraph (5)(A)(i) incorporates, and does not distinguish among, the various substantive grounds set forth in the remainder of paragraph (5). A disallowance will always be "pursuant to paragraph (5)(A)(i)" for purposes of paragraph (6)(A) regardless of the grounds on which the FDIC bases its disallowance.

The Third Circuit was concerned that if the filing periods were not jurisdictional bars, the language "such disallowance shall be final" in paragraph (5)(C)(i) would be accorded no meaning. *See Althouse,* 969 F.2d at 1546. As noted above, however, this language has a plain meaning that does not involve a jurisdictional bar. Moreover, to hold that the "such disallowance shall be final" language imposes a jurisdictional bar would render meaningless certain language contained in paragraph (6)(B).

The language of section 1821(d)(6)(B) indicates that Congress did not intend the filing period established pursuant to section 1821(d)(3)(C)(ii) to be a jurisdictional bar. Paragraph (6)(B), entitled "[s]tatute of limitations," requires that a claimant must file suit or initiate an administrative appeal process within 60 days of the initial administrative determination or "the claim shall be deemed to be disallowed ... as of the end of such period, such disallowance shall be final, *and the claimant shall have no further rights or remedies with respect to such claim*" (emphasis added). Whatever the import of the emphasized language,[7] Congress clearly intended its effect to be more significant than the simple "such disallowance shall be final" language in paragraph (5)(C)(i). Thus, to read the language in paragraph (5)(C)(i) as creating a jurisdictional bar would convert the emphasized language in paragraph (6)(B) into mere surplusage. *See, e.g., Babbitt v.*

*Sweet Home Chapter of Communities for a Great Or.,* 515 U.S. 687, 698, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995) (applying canon disfavoring readings of statutes that convert statutory language into surplusage); *Belloff v. Commissioner,* 996 F.2d 607, 616 (2d Cir. 1993) (same).

### B. Legislative History

A review of legislative history only confirms our conclusion that Congress did not intend a failure to comply with the filing periods established by the FDIC pursuant to the provisions of 12 U.S.C. § 1821(d)(3)(C)(ii) to constitute a jurisdictional bar in the district courts. The Reports of the House Committee on Banking, Finance and Urban Affairs ("Banking Committee Report") and the House Committee on the Judiciary ("Judiciary Committee Report") include specific discussions of the claims review provisions of the FIRREA. *See* H.R.Rep. No. 101–54(I), at 418–19, *reprinted in* 1989 U.S.C.C.A.N. 86, 215; H.R.Rep. No. 101–54(V), at 12, *reprinted in* 1989 U.S.C.C.A.N. 86, 405. Although both Committee Reports mention the 180–day period in which the FDIC must review and decide a claim, and the Banking Committee Report mentions the 60–day period in which a claimant must file suit after receiving a disallowance, neither Report mentions any time period for initiating the claims process. If any inference is to be drawn from this omission, it is that Congress did not focus on the time frame in which claims would be submitted to the FDIC and did not consider it a jurisdictional requirement.

### C. Precedent Cases

The question presented, whether the notice provisions of 12 U.S.C. § 1821(d)(3)(C)(ii) impose a jurisdictional bar, is a question of first impression in this Court. Several courts have confronted situations in which plaintiffs filed untimely claims under paragraph (3)(B)(i) and have held that timely filing prior to the bar date is a jurisdictional requirement under that provision. *See, e.g.,*

---

7. Several courts have held that the "[s]tatute of limitations" under paragraph (6)(B) is a jurisdictional bar. *See Home Capital Collateral, Inc. v. FDIC,* 96 F.3d 760, 764 (5th Cir.1996); *Astrup v.*

*Resolution Trust Corp.,* 23 F.3d 1419, 1421 (8th Cir.1994); *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 193 (7th Cir.1993).

*Paul v. FDIC,* 91 F.3d 110, 113 (11th Cir. 1996); *Althouse,* 969 F.2d at 1545; *FDIC v. Atchison & Keller,* 913 F.Supp. 19, 24–25 (D.D.C.1996); *Capital Data Corp. v. Capital Nat'l Bank,* 778 F.Supp. 669, 676 (S.D.N.Y. 1991). Because we premise our analysis on the proposition that the Association's claim arose after the bar date, these cases are inapposite to the situation presented here because they all involve claims that arose before the bar date. The bar date cannot act as a jurisdictional bar to the Association's claim because the claim arose after the bar date. Nonetheless, with the exception of *Althouse,* discussed *supra,* none of these cases offers any analysis regarding whether timely filing with the FDIC represents a jurisdictional barrier or merely something akin to a statute of limitations. To the extent that these cases would seem to erect a jurisdictional barrier to post-bar date claims, we reject their conclusion.

Moreover, it appears from the *Paul* case that the FDIC itself has taken the position that the bar date was not a jurisdictional barrier. *See* 91 F.3d at 112. In that case, the Eleventh Circuit, addressing a "Stipulation of Reversal" that the FDIC adopted,[8] noted that the FDIC sought to "forgiv[e] the untimely filing of [plaintiff's] claim and waiv[e] the exhaustion of administrative remedies." *Id.* Holding that the FDIC had no authority to waive subject matter jurisdiction, the Court ultimately deemed the Stipulation to be a stipulation of fact that the plaintiff's claim was timely filed and reversed the district court's dismissal on the ground of untimely filing. *See id.* at 112–13. Because it is "axiomatic" that agencies can neither grant nor curtail federal court jurisdiction, *see Miller v. FCC,* 66 F.3d 1140, 1144 (11th Cir.1995), a more likely interpretation of the FDIC's action is that the FDIC believed it was waiving a statute of limitations type of defense.

 In sum, upon a review of the FIRREA's structure, its legislative history, and relevant precedent, we are left with "substantial doubt" that Congress intended the

notice provision to act as a jurisdictional bar in the circumstances presented here. However, our holding that the filing period established in the Notice Letter is not jurisdictional does not nullify all the legal consequences of untimely filing. As a filing period akin to a statute of limitations, noncompliance may be raised as an affirmative defense. Also like a statute of limitations, the filing period is subject to "waiver, estoppel, and equitable tolling." *Zipes,* 455 U.S. at 393, 102 S.Ct. 1127; *see also Bowden v. United States,* 106 F.3d 433, 438 (D.C.Cir.1997) ("Like other courts, we have excused parties who were misled about the running of a limitations period, whether by an adversary's actions, by a government official's advice upon which they reasonably relied, or by inaccurate or ineffective notice from a government agency required to provide notice of the limitations period." (citations omitted)). On remand, the district court may consider whether any of these doctrines apply to excuse the untimely filing of the claim. *See Downey v. Runyon,* 160 F.3d 139, 146 (2d Cir.1998).

In closing, we note that this is the type of case that could have been avoided if counsel for either side had exercised greater diligence. If the FDIC's communications with the Association had been clearer or if the Association's counsel had been more assiduous in uncovering details of the administrative process adopted by the FDIC, this case would not have reached us in this posture.

### CONCLUSION

The judgment of the district court is vacated, and the case is remanded to the district court for further proceedings in accordance with the foregoing.

---

**8.** The RTC had originally filed the Stipulation and the FDIC adopted it in its capacity as successor to the RTC. *See* 91 F.3d at 112.