Dennis PAESE, Plaintiff–Appellee,

v.

**HARTFORD LIFE and ACCIDENT INSURANCE COMPANY, Defendant–Appellant.**

Docket Nos. 04–3922–CV(L), 04–4068–CV(XAP).

United States Court of Appeals, Second Circuit.

Argued: Sept. 26, 2005.

Decided: May 24, 2006.

438

Christopher S. Rooney, Casey Mahon & Rooney, LLP, New York, NY, for Defendant–Appellant.

Johnathan D. Abraham, Abraham & Lerner, LLP, New York, NY, for Plaintiff–Appellee.

Before CALABRESI, KATZMANN, B.D. PARKER, Circuit Judges.

B.D. PARKER, JR., Circuit Judge.

Defendant–Appellant Hartford Life and Accident Insurance Company ("Hartford") appeals from a judgment of the United

States District Court for the Southern District of New York (Chin, *J.*). After a bench trial on the administrative record, the district court found that Plaintiff–Appellee Dennis Paese was entitled to benefits under a long-term disability plan provided by his employer, Sequa Corporation ("Sequa"), through an insurance policy issued by Hartford. *See generally Paese v. Hartford Life & Accident Ins. Co.,* 2004 WL 764760, 2004 WL 764760 (S.D.N.Y. Apr.9, 2004).

Hartford contends that the district court erred in awarding Paese disability benefits, damages for outside insurance coverage, and attorney's fees. We affirm the district court's award of long-term disability benefits and attorney's fees, but we vacate its award of damages for the purchase of supplemental insurance. In so doing, we clarify that a plaintiff's failure to exhaust administrative remedies when bringing a claim for benefits pursuant to the Employee Retirement Income Security Act ("ERISA") section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), does not mean we lack subject matter jurisdiction, but rather is an affirmative defense, subject to waiver, estoppel, futility, and similar equitable considerations.

## BACKGROUND

Sequa hired Paese in March 1977, and he served as its Director of Labor and Employee Relations from January 1987 until September 1999. On August 30, 1999, Paese injured his neck, shoulders, back and wrists in an automobile accident. Paese initially returned to work after the accident, but on September 8, 1999, he left work in severe pain, and never returned. A short time later, Sequa reorganized Paese's department and eliminated his position.

Paese participated in Sequa's Group Long Term Disability Insurance Policy (the "Sequa Plan"), which was issued by Hartford and governed by ERISA. The Sequa Plan offered three possible periods of disability benefits, depending on eligibility: (1) short-term benefits for six months; (2) long-term benefits for twenty-four months after the expiration of the short-term benefits, for employees who, due to accident or sickness, could not perform the essential duties of their "own occupation"; and (3) long-term disability benefits thereafter until the Social Security Normal Retirement Age (age sixty-six for Paese), for employees who, due to accident or sickness, could not perform the essential duties of "any occupation" for which they are qualified by education, training or experience.

Paese received six months of short-term benefits consisting of "salary continuation" at a rate of $2,639.50 per week from September 8, 1999 until March 8, 2000. On March 5, 2000, Paese filed for long-term disability benefits, claiming total disability from September 8, 1999. On April 25, 2000, Hartford requested that Sequa clarify Paese's job duties, and Sequa subsequently explained that extensive travel in Europe and North America by car and airplane was an essential function. On April 26, 2000, Paese had surgery on his elbow and arms, in order to treat symptoms of carpal tunnel syndrome. On May 4, 2000, Hartford approved Paese's application for long-term disability benefits beginning March 8, concluding that he was totally disabled under the own occupation standard. On September 27, 2000, Paese underwent back surgery.

Beginning in early 2001, Hartford began to have second thoughts. Hartford's assistant medical director, Dr. George Kazda, and a registered nurse on Hartford's clinical staff, Cynthia French, reviewed Paese's file. Dr. Kazda and Nurse French concluded that, contrary to the opinions of his

treating physicians, Paese was not really totally disabled from performing his own occupation. Based on this internal review, Hartford changed its mind, and concluded that Paese was not totally disabled under the own occupation standard. Accordingly, on October 11, 2001 Hartford reversed its earlier decision and refused to pay further disability benefits.

In a series of letters from Paese to Hartford between November 2001 and February 2002, Paese administratively appealed the decision to terminate his benefits. In these letters, Paese responded to Hartford's findings and provided additional medical information and test results, as well as the names of additional treating physicians. In February 2002, Paese also provided Hartford a copy of a determination by the Social Security Administration ("SSA") that he was totally disabled.

On March 8, 2002, Paese's twenty-four months of long term benefits expired, causing the automatic transition from the own occupation standard to the any occupation standard. As a part of Paese's administrative appeal, Hartford requested that Dr. Barry Turner, a medical consultant, review Paese's medical records. On March 19, Dr. Turner issued a report recommending final termination of Paese's long-term disability benefits because he was not (and according to Dr. Turner never was, even immediately after his accident) totally disabled. On March 20— after the March 8 transition to the any occupation standard—Hartford finally denied Paese's request for long-term benefits.

On December 11, 2002, Paese commenced this action against Hartford. The parties stipulated to a bench trial on the administrative record, without witnesses. During the course of the bench trial, Paese sought to introduce the results of a medical examination by Dr. Robert Stoller,

which provided yet another independent evaluation of Paese's injuries and disability. This report had been prepared during the course of a personal injury action in New Jersey arising out of the automobile accident that had caused Paese's injuries. Though the report had not previously been a part of the administrative record, the district court admitted and relied on it in making its decision. *See Paese*, 2004 WL 764760, at \*7, \*8, \*10.

After considering the record, the district court found that Paese was totally disabled under both the own occupation and any occupation standards, and was therefore entitled to (1) long-term benefits of $6,862.70 per month starting October 11, 2001 (with prejudgment interest), (2) future benefits under the Sequa Plan, and (3) reasonable attorney's fees. *See id.* at \* 11.

Following the ruling, the parties submitted competing proposals on what was owed to Paese. Ultimately, the district court directed entry of a final judgment of $237,755.73, which consisted of (1) back long-term disability benefits of $146,755.73, (2) attorney's fees of $73,380, and (3) the cost of conversion and alternative insurance paid by Paese of $17,640. This appeal followed.

## DISCUSSION

### I. Award of disability benefits

Hartford raises several issues on appeal regarding the district court's award of disability benefits. It contends that the district court: (1) improperly shifted the burden to Hartford to prove Paese's total disability; (2) abused its discretion by considering evidence outside the administrative record; (3) clearly erred in awarding Paese long-term benefits under the own occupation standard; and (4) exceeded its jurisdiction by awarding Paese permanent

long-term disability benefits under the any occupation standard. The first three issues do not require much discussion while the fourth affords us an opportunity to clarify the exhaustion requirements under ERISA.

### A. Burden of proof

 The placement of the burden of proof is a question of law that we review *de novo*. *See Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 293 (2d Cir.2004). All parties agree that "as a matter of general insurance law, the insured has the burden of proving that a benefit is covered." *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 765 (2d Cir.2002).

Hartford contends that the district court improperly placed the burden on Hartford throughout its analysis of Paese's claimed total disability, based in large part on the following solitary line of the district court's opinion: "Hartford itself decided, on May 4, 2000, that Paese *was* Totally Disabled, and it has simply not demonstrated that Paese's condition had improved by October 11, 2001, to the point that he was no longer disabled." *Paese*, 2004 WL 764760, at *9 (emphasis in original).

We disagree that this lone reference shows that the district court did anything wrong. At the outset of its analysis, it clearly and correctly stated that "Paese has the burden of proving by a preponderance of the evidence that he is totally disabled within the meaning of the plan." *Id.* The district court carefully analyzed and weighed the evidence. *See id.* at *9–*10. It credited both Paese's evidence and the independent medical evidence, and it discounted Hartford's evidence. Our review of the record leads us to conclude

that the court understood the burden of proof and placed it where it belonged.

### B. Consideration of evidence outside administrative record

 Hartford next claims that the district court abused its discretion by admitting Dr. Stoller's report. Again, we disagree. Where, as here, the plan administrator is not disinterested (*i.e.*, Hartford was both the plan administrator and insurer), "the decision whether to admit additional evidence is one which is discretionary with the district court, but which discretion ought not to be exercised in the absence of good cause." *DeFelice v. Am. Int'l Life Assurance Co.*, 112 F.3d 61, 66 (2d Cir.1997), *cited in Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir.2003). The district court, applying *DeFelice*, found that good cause existed for the admission of the report because it was highly probative and written by a disinterested party who had actually examined Paese, and because Paese was not at fault for the report's initial absence from the record.[1] In light of these entirely appropriate findings, we conclude that the district court did not abuse its discretion in admitting the report.

### C. Eligibility under the own occupation standard

 Hartford next argues that the district court erred in finding that Paese was eligible for benefits from March 8, 2000 to March 8, 2002 under the own occupation standard. Once again, we disagree. "Where an ERISA plan does not accord an administrator 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' a district

---

1. Dr. Stoller's report was written after Hartford made its initial decision denying Paese's disability benefits in October 2001, and the district court reasonably inferred that the report was not in Paese's hands until after Hartford made its final decision on March 20, 2002. *See Paese*, 2004 WL 764760, at *7 n. 4.

court reviews all aspects of an administrator's eligibility determination, including fact issues, *de novo.*" *Locher,* 389 F.3d at 293 (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)); *see also Krizek v. Cigna Group Ins.,* 345 F.3d 91, 98 (2d Cir.2003); *Muller,* 341 F.3d at 123–24. Neither party disputes that the Sequa Plan does not give Hartford full discretion to interpret and apply its terms. Thus, the district court correctly found that it could review Hartford's decision to terminate benefits *de novo,* instead of under a more restrictive arbitrary and capricious standard. *See Paese,* 2004 WL 764760, at *8.

■ Where the district court reviews an ERISA plan's eligibility determination *de novo,* we, in turn, review factual findings for clear error, and legal conclusions *de novo. See Locher,* 389 F.3d at 293. Under those standards, we conclude that there were sufficient facts in the record generated from a variety of sources—facts which the district court appropriately discussed and relied upon—to support the finding that Paese was totally disabled. *See Paese,* 2004 WL 764760, at *3–*8. The district court drew no impermissible inferences from the evidence, nor is it evident to us that the court was mistaken in its conclusion.

■ As for the specific issue of whether the district court gave undue weight to the conclusions of Paese's treating physicians, *see id.* at *9 & n. 6, the Supreme Court has explicitly stated that, unlike the SSA, ERISA Plan administrators need not give special deference to a claimant's treating physician. *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor

may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."). However, the Court in *Black & Decker* also observed that ERISA Plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* Accordingly, while *Black & Decker* holds that no special deference is required, this does not mean that a district court, engaging in a *de novo* review, cannot evaluate and give appropriate weight to a treating physician's conclusions, if it finds these opinions reliable and probative. This is precisely what happened here.

■ As for the specific issue of whether the district court gave undue weight to the SSA's finding that Paese was totally disabled, we are not troubled. *See Paese,* 2004 WL 764760, at *10. The court acted well within its discretion when it considered the SSA's findings as some evidence of total disability, even though they were not binding on the ERISA Plan, and even though the SSA's definition of disability may differ from that in the Sequa Plan. *See Billinger v. Bell Atlantic,* 240 F.Supp.2d 274, 285 (S.D.N.Y.2003) ("Plaintiff alleges that the Social Security Administration's decision to grant her social security disability benefits is evidence of a 'complete disability' under the Plan. While I agree that it is 'evidence,' it is but one piece of evidence ....") (internal citations omitted); *Pagan v. Nynex Pension Plan,* 846 F.Supp. 19, 21 (S.D.N.Y.1994) ("Social Security determinations are [ ] not binding on ERISA plans ...."); *cf. Kunstenaar v. Conn. Gen. Life Ins. Co.,* 902 F.2d 181, 184 (2d Cir.1990) (statutory definitions of disability such as those governing the SSA are not binding on a district court engaged in *de novo* review of an ERISA Plan's denial of long-term disability benefits); *cf.*

*Muller,* 341 F.3d at 125–26 ("As to the SSA decision, it was made after First Unum's review had been completed and has little independent probative value."). True, the SSA's determination did not bind either the ERISA Plan or the district court. However, it does not follow that the district court was obligated to ignore the SSA's determination, especially if the district court found the determination probative, if not necessarily dispositive, as was the case here.

### D. Eligibility for permanent benefits under the any occupation standard

■ Having disposed of the majority of Hartford's arguments, we now turn to the key issue in this case. Hartford maintains that the district court did not have jurisdiction to grant Paese permanent long-term benefits under the any occupation standard because he had not exhausted his administrative remedies and had not given Hartford the opportunity, in the first instance, to decide the issue. Initially, we note although ERISA requires that all benefit plans provide for carrier review, *see* 29 U.S.C. § 1133, it contains no statutory exhaustion requirement. Indeed, section 502(a)(1)(B) of ERISA, under which Paese brought his claim, simply states that "[a] civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan, does not itself include an exhaustion requirement." That said, the federal courts— including this Circuit—have recognized a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993) (internal quotation marks omitted). Thus, the first question we must address is whether a plaintiff's failure to exhaust the remedies provided in an ERISA plan implicates our subject matter jurisdiction, or merely serves as an affirmative defense.

As the Supreme Court has recently reminded us in *Eberhart v. United States,* — U.S. ——, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam): " 'Clarity would be facilitated' ... 'if courts and litigants used the label "jurisdictional" not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.' " *Id.* at 405 (quoting *Kontrick v. Ryan,* 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004)). In other words, we are called on to address whether the administrative exhaustion requirement under ERISA section 502(a)(1)(B) is truly "jurisdictional" in the Article III sense, or is more akin to a "claim-processing rule," which would be an affirmative defense subject to equitable considerations such as waiver, estoppel or futility.

Admittedly, our case law has been somewhat casual when discussing the judicially-created exhaustion requirements under section 502(a)(1)(B). On the one hand, we occasionally use "jurisdictional" language when discussing the exhaustion requirements. *See, e.g., Peterson v. Cont'l Cas. Co.,* 282 F.3d 112, 117 (2d Cir.2002) ("[A]bsent a determination by the plan administrator, federal courts are *without jurisdiction* to adjudicate whether an employee is eligible for benefits under an ERISA plan.") (emphasis added). On the other hand, we have also stated that "absent a clear and positive showing that seeking review by the carrier *would be futile,* that remedy must be exhausted prior to the institution of litigation." *Jones v. UNUM Life Ins. Co. of Am.,* 223 F.3d 130, 140 (2d Cir.2000) (internal quotation marks omit-

ted) (emphasis added); *but see Locher*, 389 F.3d at 298 (characterizing *Jones* as holding that "the issue of eligibility for permanent benefits had not ripened into a dispute capable of conferring jurisdiction on a district court until the plan administrator had made a determination in that regard").

In our latest (albeit tangential) statement on this subject in *Nichols v. Prudential Insurance Co. of America*, 406 F.3d 98 (2d Cir.2005), we stated that it was "unclear" whether a motion to dismiss for failure to exhaust administrative remedies under ERISA section 502(a)(1)(B) "is properly brought for failure to state a claim, lack of subject matter jurisdiction, or on some other procedural basis." *Nichols*, 406 F.3d at 105. We declined to resolve the issue, recognizing that the standard of review was the same (*de novo*) regardless. *See id.* Moreover, we suggested that "a plan administrator's failure to adhere literally to the regulatory deadlines renders the claimant's administrative remedies exhausted by operation of law and consequently permits the claimant to seek review in the federal courts without further delay." *Id.* at 106.

Our Court has recognized a number of situations where a "claim-processing" administrative exhaustion requirement is an affirmative defense and not a jurisdictional bar. For instance, we have held that in the employment discrimination context,

"the exhaustion requirement, while weighty, is not jurisdictional," *Boos v. Runyon*, 201 F.3d 178, 182 (2d Cir.2000), and is subject to waiver, estoppel, and equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Briones v. Runyon*, 101 F.3d 287, 290 (2d Cir.1996). Similarly, under the Labor Management Relations Act of 1947, *see* 29 U.S.C. § 185, the failure to exhaust labor union grievance procedures is an affirmative defense, rather than a jurisdictional bar. *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 n. 2 (2d Cir.1988); *Johnson v. Gen. Motors*, 641 F.2d 1075, 1079 (2d Cir. 1981). Also, under the Financial Institution Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821 (1994), we have held that the complete failure to take the appropriate administrative action constituted a jurisdictional bar to suit in federal court, but that the mere late filing of such an action, after the agency's limitation period had expired, did not deprive the district court of jurisdiction. *See Carlyle Towers Condo. Ass'n v. FDIC*, 170 F.3d 301, 307 (2d Cir.1999) ("Although the FIRREA makes exhaustion a jurisdictional requirement, it does not necessarily follow that compliance with time limits imposed by the FDIC [has] the same force.").[2]

Perhaps our most thorough investigation of the question of whether exhaustion is

---

**2.** The Seventh Circuit has recently held that the failure to exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.A. § 1400 *et seq.*, also is only an affirmative defense, not a jurisdictional bar. *See Mosely v. Bd. of Educ.*, 434 F.3d 527, 532–33 (7th Cir.2006). We, however, have yet to reach a clear conclusion on this question. *See, e.g., Handberry v. Thompson*, 436 F.3d 52, 60 (2d Cir.2006) (stating that the failure to "exhaust IDEA administrative remedies deprive[s][a] court of subject matter jurisdiction" but also referring to the failure to exhaust administrative reme-

dies under IDEA as the defendants' "nonexhaustion defense," in a case where we contemplated, but did not decide, whether those requirements are subject to waiver) (citing *Polera v. Bd. of Educ.*, 288 F.3d 478, 483, 488–90 (2d Cir.2002)). Nevertheless, we do recognize a "futility" exception to IDEA's administrative exhaustion requirements. *See, e.g., J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir.2004); *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 788–91 (2d Cir.2002); *Heldman v. Sobol*, 962 F.2d 148, 158 (2d Cir.1992).

"jurisdictional" comes from our recent analysis of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *See generally Hemphill v. New York,* 380 F.3d 680, 686–90 (2d Cir.2004). We concluded that "unless the failure to exhaust administrative remedies is 'essential to the existence of the claim, or to ripeness, and therefore to the presence of an Article III case or controversy,' " the statutory requirement to exhaust administrative remedies under the PLRA did not affect a court's jurisdiction to hear the case. *Richardson v. Goord,* 347 F.3d 431, 434 (2d Cir.2003) (per curiam) (quoting *Perez v. Wis. Dep't of Corr.,* 182 F.3d 532, 535–36 (7th Cir.1999)). Since *Richardson,* we have held that a litigant's failure to exhaust in the PLRA context is an affirmative defense that can be waived, and that a defendant's actions may subject him to claims of estoppel. *See Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004); *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004) (per curiam); *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999); *accord Handberry v. Thompson,* 436 F.3d 52, 59 (2d Cir.2006).

In the PLRA context, courts now perform a three-part inquiry to determine whether a prisoner-plaintiff can successfully rebut an affirmative defense of failure to exhaust: (1) Were the administrative remedies "in fact 'available' to the prisoner"? *Hemphill,* 380 F.3d at 686 (citing *Abney,* 380 F.3d at 667–69); (2) Did the defendant "forfeit[ ] the affirmative defense of nonexhaustion by failing to raise or preserve it" or is he otherwise estopped from raising the defense? *Hemphill,* 380 F.3d at 686 (citing *Johnson v. Testman,* 380 F.3d 691, 695–96 (2d Cir.2004) and *Ziemba,* 366 F.3d at 163); and (3) Have " 'special circumstances' [ ] been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural require-

ments' "? *Hemphill,* 380 F.3d at 686 (quoting *Giano,* 380 F.3d at 676).

We believe that these principles, developed in the PLRA context, serve as particularly apt analogs to the administrative exhaustion requirements under ERISA section 502(a)(1)(B). It is certainly true, as described above, that there is a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993) (internal quotation marks omitted). However, we have described the "primary" purposes of the exhaustion requirement under ERISA as follows:

> [to] uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; [to] provide a sufficiently clear record of administrative action if litigation should ensue; ... [to] assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo[;]* ... to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.

*Id.* (internal quotation marks omitted).

These important policy goals have little or no bearing on the existence of a claim, or on ripeness, and therefore have little to do with the presence of an Article III case or controversy. The fact that ERISA, unlike the PLRA, does not even contain a statutory exhaustion requirement, further strengthens our conclusion. Indeed, the requirement is purely a judge-made concept that developed in the absence of statutory language demonstrating that Congress intended to make ERISA administrative exhaustion a jurisdictional requirement. *Cf. Richardson,* 347

F.3d at 434 ("Numerous circuits have pointed out that [the PLRA] lacks the sweeping and direct language that would indicate a jurisdictional bar rather than a mere codification of administrative exhaustion requirements.") (internal quotation marks omitted). For these reasons, we hold that a failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense.

▆ Having determined that a failure to exhaust ERISA administrative remedies under section 502(a)(1)(B) is an affirmative defense, we now consider whether Hartford can successfully assert it. To begin, Paese argues that Hartford failed to object to the any occupation determination before the district court. "In general we refrain from passing on issues not raised below." *Virgilio v. City of New York,* 407 F.3d 105, 116 (2d Cir.2005) (internal quotation marks omitted); *see Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). "The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, ... waiver will bar raising the issue on appeal." *United States v. Braunig,* 553 F.2d 777, 780 (2d Cir.1977), *quoted in Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 124 n. 29 (2d Cir.2005).

As Paese correctly observes, Hartford knew from the moment they received his complaint in December 2002 that he sought "future benefits up until the time of his death based on his permanent disability." Complaint at 7. Yet, prior to the district court's decision, Hartford neglected to raise this issue.[3] Even after the district court's decision, Hartford failed to raise this issue, even though it had numerous opportunities to do so. For instance, Hartford submitted an opposition to Paese's proposed judgment. In this lengthy filing, Hartford objected to Paese's calculations of pre-judgment interest, cost of living adjustments, and purchase of outside insurance, and requested that Paese's recovery be reduced by his receipt of Social Security benefits. However, Hartford did not object to the award of past benefits from October 12, 2001 until April 30, 2004 (which includes the March 8, 2002 transition date), nor to the award of benefit payments into the future.

▆ We recognize that we retain broad discretion to consider issues not raised below because the waiver rules are prudential and not jurisdictional. *See Westinghouse Credit Corp. v. D'Urso,* 371 F.3d 96, 103 (2d Cir.2004). However, when the waived issue involves factual determinations, as is the case here, we are seldom inclined to exercise this discretion. *See Baker v. Dorfman,* 239 F.3d 415, 420–21 (2d Cir.2000). Thus, because this issue on the transition from the own occupation to the any occupation standard was not

---

**3.** Hartford claims in a footnote to its reply brief on appeal that it referred to its rights on the change in definition of disability in a footnote to its reply brief before the district court, where it stated essentially that "if the District Court were to make any award of benefits, it could only be done subject to the terms of the Sequa Plan." Appellant's Reply Br. at 13 n. 5. This statement in a footnote was insufficient to preserve the argument that the district court could only consider disability benefits under the own occupation standard. *See Caiola v. Citibank, N.A.,* 295 F.3d 312, 328 (2d Cir.2002) (argument raised in a footnote in a brief to the district court insufficient to preserve the issue for appellate review); *see also Universal City Studios, Inc. v. Corley,* 273 F.3d 429, 445 (2d Cir.2001) ("[W]e have repeatedly ruled that arguments presented to us only in a footnote are not entitled to appellate consideration."); *United States v. Restrepo,* 986 F.2d 1462, 1463 (2d Cir.1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.").

raised before the district court, and involves some factual determinations and not merely questions of law, we deem it waived. *See Burnette v. Carothers*, 192 F.3d 52, 58 (2d Cir.1999) (finding appellants waived a claim where they "failed to raise this issue in the district court, even though they were then represented by counsel" and "no miscarriage of justice will result").

■ Even if this issue had been raised below, we would nonetheless conclude that Hartford could not successfully assert it. Here, the transition from the own occupation standard to the any occupation standard on March 8, 2002 occurred *during* the pendency of Paese's administrative appeal, and *prior* to the ERISA Plan's final determination on March 20, 2002. Thus, here we are faced with an appeal process that began during the time period of the own occupation standard, but finally ended during the time period of the any occupation standard. Paese essentially argues both that Hartford's actions estop it from now claiming that he failed to exhaust his administrative remedies with respect to the permanent long-term disability benefits under the any occupation standard, and that any attempt to exhaust his administrative remedies would have been futile.[4] We agree.

■ A party claiming equitable estoppel "must have relied on its adversary's conduct in such a manner as to change his position for the worse, and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adver-

sary's conduct was misleading." *Becker v. IRS (In re Becker)*, 407 F.3d 89, 99 (2d Cir.2005) (quoting *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)). Here, Paese claims that he did not formally exhaust his administrative remedies under the any occupation standard because of Hartford's correspondence with him.

Hartford's correspondence in effect told Paese that its final administrative determination would encompass both the own occupation and any occupation standards. In a letter dated February 13, 2002, Hartford alerted Paese that

> [P]er your request we have made attempts to update the medical information in your file by writing to various physicians referenced in your letters. We have given each physician that information was requested from *[sic] until March 8, 2002 to respond.* At that time, we will have you *[sic]* claim file reviewed. If you plan on further supplementing your appeal, please do so prior to this date *to avoid the need for multiple reviews.* Please be aware that *we will address and consider your multiple concerns* in formulating our *final decision.*

Letter from Robert R. Dombrowski, Jr., Hartford Appeals Specialist, to Paese dated Feb. 13, 2002 (emphasis added). The letter clearly alerted Paese that (1) his final review would occur *on or after* March 8, 2002—*i.e.*, the transition date from the own occupation to the any occupation standard; (2) he should submit any additional information before March 8, 2002 to "avoid

---

4. Since we only announced today that exhaustion under ERISA is an affirmative defense, unsurprisingly, Hartford did not assert failure to exhaust administrative remedies under ERISA section 502(a)(1)(B) as such a defense. Normally, if an affirmative defense is not pleaded, it is waived. *See, e.g., Nat'l Mkt.*

*Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 526 (2d Cir.2004); 5 Charles A. Wright et al., *Federal Practice and Procedure 3d* § 1278 (2004). However, because we announce a new rule, Hartford should not be penalized for omitting an affirmative defense it did not know it had at the time.

the need for multiple reviews"; (3) this post-March 8, 2002 review would encompass all his "multiple concerns" on appeal; and (4) this post-March 8, 2002 review would result in a "final decision." *Id.*

On February 16, 2002, in response to the February 13 letter, Paese sent Hartford additional medical reports for inclusion in his file. *See* Letter from Paese to Hartford LTD/LIFE Appeal Unit—B2E dated Feb. 16, 2002. In this letter, Paese stated "I believe that I have and continue to meet the Plan requirements for the initial granting of benefits as well *as those post March 8, 2002.*" *Id.* (emphasis added). On February 28, Paese sent another letter informing Hartford of the SSA's determination that he was totally disabled from *any occupation.* Thus, Paese's correspondence clearly alerted Hartford that one of his multiple concerns was his total disability under the any occupation standard.

Hartford did not disabuse Paese of his belief that his disability under the any occupation standard was a legitimate concern in his administrative appeal. To the contrary, Hartford's March 20 letter told Paese that it was issuing its final ruling on everything. This letter stated, in part:

> While your claim was terminated as of October 11, 2001, we have evaluated *your entire claim file* from your last day worked through the applicable Elimination Period and *to the present [i.e.,* March 20, 2002] to insure a full and fair review.... Please be advised that *our claim decision is now final as you have exhausted any administrative remedies available* to you under the policy.

Letter from Dombrowski to Paese dated Mar. 20, 2002, at 3, 7 (emphasis added). This final determination, by its own terms, evaluated Paese's disability condition up until the *present—i.e.,* March 20, 2002— which Paese reasonably read to mean that Hartford evaluated Paese's disability according to the applicable any occupation standard which applied at that time (post-March 8, 2002). If Hartford did not want to convey to Paese the mistaken impression that his eligibility under the any occupation standard was at issue in its final decision on his appeal, it should have written him a different letter. If Hartford wanted to preserve its rights to make a later determination on under the any occupation standard, it also should have written a different letter. Instead, Hartford told Paese that he had no further administrative remedies, and there was nothing left for him to appeal.[5]

In addition, Dr. Turner's report dated March 19, 2002, upon which Hartford relied in its final determination of March 20, clearly stated: "Therefore, I find that [Paese] should easily be capable of performing his own occupation as of the time of the motor vehicle accident on 8/30/99 *through the current time and including through the change in definition to any occupation on 3/8/02.*" Thus, Dr. Turner's report suggests that Paese's disability status under the any occupation standard was contemplated and evaluated, and because Hartford relied on this report in making its final determination, Paese could reasonably conclude that his file had been administratively evaluated under the any occupation standard as well.

Paese also argues that it would have been futile for him to seek review of his file under the any occupation standard after Hartford issued its March 20 final decision. *See Jones,* 223 F.3d at 140. This argument finds considerable support in

---

5. Hartford's failure to raise this issue before the district court (discussed above) is further evidence that Hartford believed—until this appeal, that is—that its final decision on March 20, 2002 *did* encompass both the own occupation and the any occupation standards.

Hartford's March 20 letter to Paese containing its final decision, which, as quoted above, stated that Hartford's "claim decision is now final" and informed Paese that he had "exhausted any administrative remedies available to [him] under the policy." Letter from Dombrowski to Paese dated Mar. 20, 2002, at 7. Moreover, Paese's futility argument is further strengthened by simple logic: Hartford's decision that Paese was not totally disabled from his "own occupation" necessarily implies a decision that he was not totally disabled from "any occupation." In other words, any reasonable person in Paese's situation would necessarily conclude that it would have been futile to return to Hartford to seek administrative review of his claim for permanent disability on the post-March 8, 2002 any occupation standard, if his claim had just been denied on the more lenient own occupation standard.

## II. Post-judgment issues

We now briefly address the two remaining post-judgment issues: (1) whether Paese's out-of-pocket losses from purchasing supplemental insurance were compensable damages, and (2) whether the district court abused its discretion in awarding Paese attorney's fees.

### A. Damages for supplemental insurance

■ Both parties agree that if we uphold the district court's determination that Paese was entitled to total disability benefits through March 8, 2002, Paese is entitled to recover the amount he paid for conversion life coverage under the terms of the Sequa plan ($5,635). However, the parties dispute whether Paese can recover damages under ERISA section 502(a)(1)(B) for the purchase of "substitute" outside insurance from New York Life Insurance Company ("New York Life") when his insurance benefits from Hartford were terminated.

The facts surrounding the payment of the $12,005 annual premium for term life insurance from New York Life are not the model of clarity. Hartford sent Paese a letter dated May 12, 2004 that stated that his term life insurance under the Sequa plan would expire in July 2004. In this letter, Hartford offered Paese permanent life insurance at an annual premium of $19,162.45. On appeal, Paese claims that when he learned of the high cost of Hartford's life insurance, he "sought and found the most cost effective alternative," which apparently was offered by New York Life.

However, as noted by Hartford, the record shows that Paese paid $12,005 for New York Life's insurance on August 16, 2003, nearly a year before the May 12, 2004 letter. Moreover, Hartford claims that the conversion insurance which Paese purchased under the terms of the Sequa Plan was still in effect due to Paese's payment of a $2,838 premium in July 2003. Thus, Hartford argues that Paese's purchase of the New York Life insurance was unrelated to any of Hartford's actions. Paese admits that Hartford continued to provide term life insurance coverage, but places the blame on Hartford for having to purchase the policy from New York Life, arguing that Hartford never formally told him that his insurance coverage would continue under the Sequa Plan. Specifically, Paese contends that he reasonably relied on Hartford's letter of September 23, 2002 stating that his term life insurance would expire in eleven months from that date (approximately August 23, 2003).

However, Paese fails to explain adequately why he paid a $2,838 premium in July 2003 for the Hartford term life insurance policy (which would have covered him until July 2004) prior to his payment of $12,005 to New York Life in August 2003.

If he were relying on Hartford's September 23, 2002 letter that his life insurance would expire in August 2003, we are unable to divine why would he have paid an annual premium of $2,838 to Hartford to continue its life insurance policy until July 2004. In light of these facts, we conclude that the district court erred in granting Paese damages of $12,005 for the purchase of the New York Life insurance policy, because the record does not demonstrate that this policy was a replacement or substitute for the existing (and apparently inforce) Hartford policy. We therefore vacate the district court's award of damages for this supplemental insurance policy and remand for further proceedings consistent with this opinion.

## B. Attorney's fees

■■■■ We review the district court's award of attorney's fees in an ERISA action for abuse of discretion. *See Krizek,* 345 F.3d at 102. In an ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869 (2d Cir.1987), we identified the standard for determining whether to award attorney's fees:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Id.* at 871, *quoted in Locher,* 389 F.3d at 298.

■■■■ In this case, the district court applied the five *Chambless* factors, expressed the reasons why it made its decision on each factor, and then awarded reasonable attorney's fees to Paese. *See Paese,* 2004 WL 764760, at * 10–* 11. Of particular relevance to this appeal, on the first *Chambless* factor the district court noted, *inter alia,* that Hartford "largely disregarded substantial evidence of [Paese's] serious injuries and relied instead on snippets pulled out of context from the medical records," that "one of the health care providers commented that Hartford had engaged in a 'manipulation' of the facts," and that "by terminating Paese's benefits and forcing him to sue, Hartford has managed to avoid paying Paese $6,862.70 per month since October 11, 2001—some two-and-a-half years." *Id.* at *10.

On appeal, Hartford primarily takes issue with the district court's analysis of the first *Chambless* factor, "culpability or bad faith". Hartford specifically argues that the district court's statement that it "d[oes] not reach the issue of whether Hartford acted in bad faith," *Paese,* 2004 WL 764760, at * 10, necessarily means that the court did not consider the "culpability or bad faith" factor in the *Chambless* test.

However, Hartford's contention studiously ignores the fact that "culpability" and "bad faith" are distinct standards. *See, e.g., Locher,* 389 F.3d at 298–99 (affirming district court which found that though insurer "did not act in bad faith in rejecting the [insured's] claim," the insurer was nonetheless "culpable"). In *Salovaara v. Eckert,* 222 F.3d 19 (2d Cir.2000), we stated that a defendant is "culpable" under *Chambless* where it "violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate." *Id.* at 28 (internal quotation marks omitted), *cited in Locher,* 389 F.3d at 299; *see also McPherson v. Employees' Pension Plan of Am. Re–Ins. Co.,* 33 F.3d 253, 256–57 (3d Cir. 1994) ("[C]ulpable conduct is commonly understood to mean conduct that is 'blame-

able; censurable; ... at fault; involving the breach of a legal duty or the commission of a fault ....' ") (quoting Black's Law Dictionary (6th ed.1990)), *cited in Locher*, 389 F.3d at 299. Therefore, it was entirely appropriate for the district court to consider the degree to which "Hartford failed to engage in a fair and open-minded consideration of Paese's claim," *Paese*, 2004 WL 764760, at \*10, as an indicator of Hartford's *culpability*, not necessarily bad faith. Because the district court found Hartford culpable, it need not have considered explicitly whether Hartford acted in bad faith to satisfy the first part of the *Chambless* test.

Furthermore, the fact that the district court analyzed the different *Chambless* factors together, and allowed one factor to influence the others, was reasonable. On occasion, we too have looked at certain *Chambless* factors together when determining whether attorney's fees are appropriate. *See, e.g., Seitzman v. Sun Life Assurance Co.*, 311 F.3d 477, 483 (2d Cir. 2002) ("We consider jointly the first and fourth *Chambless* factors, which in this case are intertwined."). For these reasons we conclude that the district court functioned well within its discretion in awarding attorney's fees.[6]

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED IN PART, VACATED IN PART, and REMANDED for further proceedings consistent with this opinion.

---

**6.** In his brief, Paese informally seeks attorney's fees for this appeal. However, he has failed to submit a formal motion pursuant to Federal Rule of Appellate Procedure 38 and Local Rule 27.