Sevely v. The Bank of New York Mellon Co.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of December, two thousand nineteen.

PRESENT:
> **DENNIS JACOBS,**
> **SUSAN L. CARNEY,**
> **MICHAEL H. PARK,**
> *Circuit Judges.*

_____

**Joseph Sevely,**

> *Plaintiff-Appellant*,

> v.                                                                    18-3247

**The Bank of New York Mellon Corporation Long Term Disability Coverage Plan, The Prudential Insurance Company of America,**

> *Defendants-Appellees*.

_____

| | |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | JOSEPH SEVELY, pro se, New York, NY. |
| **FOR DEFENDANTS-APPELLEES:** | AMANDA A. SONNEBORN, Seyfarth Shaw LLP, Chicago, IL (Robert T. Szyba, Seyfarth Shaw LLP, New York, NY, *on the brief*). |

Appeal from a judgment of the United States District Court for the Southern District of New York (Batts, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court entered on September 27, 2018, is **AFFIRMED**.

In 2017, Joseph Sevely sued the Bank of New York Mellon Corporation Long Term Disability Plan[1] (the "Plan") and the Prudential Insurance Corporation of America ("Prudential") for violating the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, alleging that they unlawfully denied his application for disability benefits under the Plan. Defendants jointly moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court granted the motion, reasoning that the plain language of the Plan and the allegations in Sevely's complaint established that he was not entitled to the claimed benefits. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

We review *de novo* the dismissal of a complaint pursuant to Rule 12(b)(6). *Forest Park Pictures v. Universal Television Network*, 683 F.3d 424, 429 (2d Cir. 2012). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all factual allegations in the complaint are assumed to be true, we do not automatically accept a complaint's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, "a

---

[1] The Plan's correct name is "The Bank of New York Mellon Health and Welfare Plan." The Bank of New York is referred to herein as "BNY."

district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Under ERISA § 502(a)(1)(B), a plan participant or beneficiary may bring a civil suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Courts may enforce, but may not change, the terms of a plan. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 435-36 (2011) (Section 502(a)(1)(B) "speaks of '*enforcing*' the 'terms of the plan,' not of *changing* them." (quoting 29 U.S.C. § 1132(a)(1)(B)) (brackets omitted)).

The Plan provided that, for a person to be "disabled" for plan purposes, he must: (1) be "unable to perform the material and substantial duties of [his] regular occupation due to [his] sickness or injury"; (2) be "under the regular care of a doctor"; and (3) "have a 20% or more loss in [his] monthly earnings due to that sickness or injury." App'x at 56 (emphasis omitted). We agree with the district court's determination that Sevely was not "disabled" within the Plan's definition because under his complaint's allegations, he failed to satisfy the third prong. Sevely alleged that his monthly earnings were never reduced while he was employed by BNY. Compl. ¶ 39, *Sevely v. The Bank of New York Mellon Co.*, No. 17-cv-6207 (S.D.N.Y. Aug. 16, 2017), ECF No. 1 ("Compl."). He has conceded, both in his brief in the district court and his brief in this Court, that he was terminated as part of a reduction in force and not because of his disability. Mem. of Law in Opp'n to Def.'s Mot. to Dismiss at 1, *Sevely v. The Bank of New York Mellon Co.*, No. 17-cv-6207 (S.D.N.Y. Dec. 4, 2017), ECF No. 18 ("BNY terminated him in a 'reduction in force' effective at end of the work day on August 31, 2015."); Appellant's Br. at 3 ("[H]is position was

3

terminated in a reduction in force."); Appellant's Reply at 5 ("The key issue is whether being included in a reduction in force precludes disability benefits which would otherwise be awarded."). Assuming, as we must at the motion to dismiss stage, the truth of his allegations, they establish that his pay was never reduced during his employment with BNY and that there was no causal connection between his disability and the termination of his employment. In order for Sevely to qualify as "disabled," the Plan required both a reduction in pay and a causal connection between that reduction and his disability. Sevely has not shown either.

Although Sevely concedes that he was terminated because of a reduction in force and not for any other reason, he nonetheless advances several arguments in support of the notion that a causal connection tied his disability to his termination. First, he points to the determination made by the Social Security Administration ("SSA") that he is eligible for disability benefits under that program. He argues that because the SSA requires a causal link between a person's disability and his or her capability to earn income, that determination proves the Plan's to be wrong. His argument is misguided. SSA awards may be considered when determining whether a claimant is disabled under a plan, but a plan administrator is not bound by such an award and is not required to accord deference to that determination because the plan's governing standards may be different. *See, e.g.*, *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006) (SSA determinations are not binding on ERISA plan administrators or district courts.).

Sevely also argues that the Plan's definitions of "monthly earnings" and "active employment" are ambiguous, and that in the face of this ambiguity, they should be interpreted in his favor. The Plan defined "monthly earnings" as: "your gross monthly income from your Employer in effect just prior to your date of disability." App'x at 57. Sevely asserts that the

4

definition is ambiguous because "it is not specified when one would start measuring subsequent monthly earnings to determine whether or not there was a 20% or greater loss." Appellant's Br. at 15-16. He suggests that the Plan's "monthly earnings loss requirement" be interpreted to mean the "loss of earnings during the month following the date an employee ceases work due to the disability, as compared to the earnings prior to cessation of work." *Id.* at 16. Even Sevely's proposed interpretation does not help him, however, since he concedes that he did not cease working because of his disability, but rather because of a reduction in force. Regardless, the Plan required consideration of Sevely's monthly earnings "just prior to" his "date of disability," App'x at 57, and Sevely's "date of disability" could not be earlier than August 31, 2015, because he worked and received his full salary until that date. His monthly earnings were never reduced during his employment with BNY.

As to the term "active employment," which is relevant under the Plan because an employee's coverage ceases on "the last day" of "active employment," the Plan states that "[a]ctive employment means that you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation." App'x at 51. Sevely contends that this definition is ambiguous, but describes no scenario in which he could reasonably be considered to have been in "active employment" after August 31, 2015. Sevely alleged that August 31 was his "separation date." Compl. ¶ 30. Thus, he could not have been "performing the material and substantial duties" of his job after that date.

5

We have considered all of Sevely's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.


       FOR THE COURT:
       Catherine O'Hagan Wolfe, Clerk of Court