John MAGEE, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

No. 07 Civ. 8816 (WHP).

United States District Court, S.D. New York.

June 22, 2009.

Jason A. Newfield, Esq., Frankel & Newfield, P.C., Garden City, NY, for Plaintiff.

Ian S. Linker, Esq., Metropolitan Life Insurance Company, Long Island City, NY, Allan Michael Marcus, Esq., Lester, Schwab, Katz and Dwyer LLP, New York, NY, for Defendant.

## MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

Plaintiff John Magee ("Magee") brings this action against Defendant the Metropolitan Life Insurance Company ("Met-Life") pursuant to Section 1132 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, challenging MetLife's denial of his claim for long-term disability benefits. MetLife counterclaims to recover an overpayment of benefits. Both parties move for summary judgment. For the following reasons, this Court grants in part and denies in part both motions. MetLife's decision denying benefits is vacated and Magee's claim is remanded to MetLife for reconsideration. MetLife's application to recover the overpayment of past benefits arising after the retroactive award of Social Security benefits is also granted. In the exercise of its discretion, this Court awards reasonable attorney's fees to Magee, which may be offset by MetLife against any unreimbursed overpayment of past long-term disability benefits.

## BACKGROUND

The following facts are undisputed unless otherwise noted. Magee is a forty-nine-year-old man. (Defendant's Rule 56.1 Statement dated Sept. 2, 2008 ("Dft. 56.1

Stmt.") ¶ 13.) He worked as a quality engineer in the Government Services division of the Eastman Kodak Company ("Kodak") from 1988 until 2003. (Dft. 56.1 Stmt. ¶ 14.) Kodak offered its employees a Long–Term Disability Plan (the "Kodak LTD Plan"), which is a self-funded employee welfare plan governed by ERISA. (Dft. 56.1 Stmt. ¶¶ 3, 5–6, 12.) Magee participated in the Kodak LTD Plan. (Dft. 56.1 Stmt. ¶ 13.) MetLife administers the Kodak LTD Plan, and has "full discretionary authority" to determine eligibility and award benefits. (Dft. 56.1 Stmt. ¶¶ 8–10.) The Kodak LTD Plan provides that a participant is "disabled" when "[a]s a result of [their] condition, [they] are totally and continually unable to engage in gainful work . . . . 'Gainful work' is paid employment for which [they] are (or [they] become) reasonably qualified by education, training, or experience, as determined by MetLife." (Dft. 56.1 Stmt. ¶ 11.)

The Kodak LTD Plan also provides that benefits will be reduced by any Social Security Disability Income benefits, including any back payment of Social Security benefits. (Dft. 56.1 Stmt. ¶ 12.) Participants are obligated to repay any overpayment by the Kodak LTD Plan. (Dft. 56.1 Stmt. ¶ 12.)

## I. *The Initial Claim*

Magee filed a claim for long-term disability benefits on July 24, 2004, asserting that he was disabled because he suffered from Chronic Fatigue Syndrome ("CFS"). (ML0544–45, ML0409 [1].) On September 1, 2004, Magee's physician, Dr. David Bell, submitted MetLife's "Attending Physician's Statement of Functional Capacity." Dr. Bell listed his primary diagnosis of CFS and secondary diagnosis of depression. (ML0411.) In the Functional Ca-

pacity Assessment, he noted that Magee's medical condition resulted in a "Severe Limitation" on his ability to walk, stand, assume a cramped position, reach, climb, balance, bend, and give concentrated visual attention. (ML0412.)

On September 20, 2004, MetLife awarded disability benefits through December 20, 2004, finding that the medical records were "supportive of [the] severity of condition," but noting that there was "no clear objective finding." (ML0008.) MetLife then conducted an additional investigation into Magee's mental condition. (ML0008–ML0009.) In October 2004, MetLife contacted Magee's psychiatrist, Dr. Alice Tariot, and his counselor, Carolyn Cerame. (ML0014.) On November 1, 2004, Dr. Tariot opined that Magee suffered from major depression and CFS (ML0015), and that Magee's negativism was a result of his serious illness and loss of function. (ML0403.)

MetLife had two consultants evaluate Magee's file. The first, Dr. Amy Hopkins, a Board-certified internal and occupational medicine physician, found that Magee's diagnosis resulted from "a variety of self-reported [symptoms] with no objective support by examinations or diagnostic test results." (ML0386.) Dr. Hopkins also found that the file did "not objectively support the presence of any condition of a nature or severity to prevent [Magee] from performing the material duties of his own or any occupation on a full-time basis, without restrictions or limitations." (ML0386.) In response, Magee's physician, Dr. Bell, countered that Magee meets the Centers for Disease Control ("CDC") criteria for CFS. He also suggested that MetLife conduct a comprehensive work and function evaluation and an exercise

---

**1.** Citations to "ML ___" are references to the administrative record submitted as Exhibit A to the Affidavit of Timothy Suter dated August 15, 2008.

physiology test. According to Dr. Bell, if the latter was "done on two consecutive days, [it would be] likely to show a marked impairment of [Magee's] aerobic capacity and this may help to document his disability." (ML0397.) MetLife never responded to Dr. Bell's suggestion.

MetLife's second independent physician consultant, Dr. Ernest Gosline, a psychiatrist, opined that Magee's depression was a disabling impairment that prevented him from working. (ML0367.) Dr. Gosline agreed that CFS was Magee's primary condition and that depression was a secondary condition. (ML0366–ML0367.) Dr. Gosline found that Magee's impairments were substantiated by objective clinical findings as well as self-reported information. (ML0366.) Acting on Dr. Gosline's opinion, MetLife approved Magee's claim on December 18, 2004. But MetLife did not explain to Magee the basis for its approval. (ML0020.) In its records, MetLife noted that the "[d]ocumentation is limited for the Chronic Fatigue Syndrome." (ML0020.)

## II. *Termination of Benefits*

In June 2005, MetLife requested an update regarding Magee's condition. Dr. Bell informed MetLife that Magee's CFS symptoms continued to be very severe. (ML0347.) He submitted data from three recent questionnaires used in CFS diagnosis: (1) a Krupp fatigue score of 56; (2) a modified Karnofsky score of twenty-five percent, and (3) an SF–36 questionnaire. According to Dr. Bell, the Krupp fatigue and modified Karnofsky scores both were in the disabled range. (ML0347.) As for the SF–36, which Dr. Bell described as "an extremely validated indicator of overall disability," it showed marked disability. (ML0347.) Dr. Bell pointed out that according to the SF–36, Magee's emotional functioning was normal, which suggested

that he had a physical, not a mental disability. (ML0347.) Dr. Bell administered the SF–36, Krupp Fatigue Questionnaire, and modified Karnofsky tests in May 2004, July 2004, December 2005, and February 2006 with consistent results. (ML0427–ML0434; Plaintiff's 56.1 Statement dated Sept. 2, 2008 ¶¶ 18–23, 27–29.)

At MetLife's request, in February 2006, Magee's therapist, Carolyn Cerame, submitted a letter informing MetLife that Magee had only been able to see her once in the past year, but that "[she had] been practicing for twenty years, and [she had] never had a client who made a more heroic effort[, and that] . . . [h]is pain is excruciating." (ML0334.) Dr. Bell also submitted the "MetLife Chronic Fatigue Initial Function Assessment" opining that Magee still had "marked disability." (ML0315–ML0318.) In April 2006, Dr. Tariot submitted her assessment, noting that his mood was stable and improved and that Magee was coping better with his illness. (ML0296–ML0297.)

At the same time, in March 2006, an Administrative Law Judge ("ALJ") awarded Magee full Social Security disability benefits, prospectively and retroactively. (ML0303–ML0308.) The ALJ determined that Magee had several "medically determinable 'severe' impairments: fibromyalgia, chronic fatigue syndrome, orthostatic hypotension, hypovolumia, and an affective disorder." (ML0304.) The ALJ noted that Dr. Tariot "agreed with Dr. Bell that the claimant's depression was secondary to physical pain and illness." (ML0304.) The ALJ found that Magee's assertions were consistent with the medical findings and were supported by the opinions of the examining and treating physicians. (ML0305.) The ALJ also found Magee credible "in light of the objective medical evidence, subjective complaints, treating physician opinions and [Magee's] good

work history." (ML0305.) In conclusion, the ALJ found that Magee was completely disabled and lacked the residual capacity to perform even sedentary work. (ML0305–ML0306.) Soon after the Social Security Disability decision, MetLife requested reimbursement from Magee for its overpayment of long-term disability benefits in the amount of $51,886.27. (ML0280–ML0281.) Magee reimbursed MetLife for the bulk of the overpayment, but still owes $16,831.21. (Dft. 56.1 Stmt. ¶ 33.)

After reviewing Dr. Tariot's submission in April 2006, MetLife determined that Magee's depression was no longer severe enough to be disabling. With regard to the CFS diagnosis, MetLife sent his file to another independent physician consultant, Dr. Dennis Payne, a rheumatologist. Dr. Payne works for Elite Physicians Ltd. a subsidiary of Network Medical Review ("NMR").[2] (ML0269.) Dr. Payne noted that Magee's evaluations by his physicians "have been extensive and appropriate." (ML0270.) Dr. Payne conferred with Magee's physician Dr. Bell. Dr. Bell acknowledged that there were "no objective findings of joint or muscle damage" nor had he identified "any objective musculoskeletal problem." (ML0271.) Thus, Dr. Payne opined that "[t]he objective medical record presently supports that Mr. Magee is capable of performing unrestricted work duties . . .", and that "there are no restrictions or limitations that are supported in the available medical data." (ML0271.) He further stated that the CFS diagnosis was "based entirely upon subjective symptomatology without any objective findings on examination, laboratory testing, imaging data, or other specific objective studies to evaluate conventional disease."

(ML0271.) However, he noted that "the 'syndrome' designation is made in that this condition is a constellation of symptoms without any histopathological correlate[, and] [w]ith that in mind, there is a consistency with the clinical evidence (or lack thereof) with the stated diagnosis." (ML0271.)

Dr. Bell disagreed with Dr. Payne's assessment of Magee. Thereafter, Dr. Payne conceded that a diagnosis of CFS "is a syndrome (constellation of symptoms) rather than an illness or disease as a result of there being no histopathological correlate specific for the condition not present in controls." (ML0225.) Nevertheless, Dr. Payne declined to change his opinion, stating that "even with a syndrome, as with a well defined illness or disease, there must be objective measures that support functional restrictions or limitations before limitations can be placed on an individual." (ML0225.)

On July 20, 2006, MetLife notified Magee that after a "thorough" review of his file, MetLife was terminating his long-term disability benefits. (ML0218.) It described Dr. Payne's findings and concluded that "based on Dr. Payne's file review and the lack of clinical evidence to support an impairment, medical [sic.] no longer supports the existence of a totally disabling condition preventing you from performing your occupation you are qualified for based on you education, training or experience." (ML0219.) MetLife indicated that Magee's file lacked "clinical evidence such as office visit notes and physical exam findings to support an ongoing severity of impairment." (ML0219.)

### III. *Administrative Appeal*

Magee appealed MetLife's decision in March 2007. (Dft. 56.1 Stmt. ¶ 29.) Prior

---

**2.** NMR and MetLife have a close and substantial business relationship. *See Nolan v. Heald College,* 551 F.3d 1148, 1152 n. 3 (9th Cir. 2009) (describing the business relationship between NMR and MetLife).

to the appeal, in December 2006, Magee asked that MetLife provide a definition of "what would constitute sufficient objective evidence to confirm [his] diagnosis of Chronic Fatigue Syndrome and the functional impairment that leads to my disability[,]" because he could not "find any objective diagnostic test that is suggested for disability confirmation." (ML0206.) MetLife never responded to this request.

In his appeal, Magee argued that Dr. Hopkins overlooked certain orthostatic hypotension and blood volume tests, and that Dr. Payne ignored the blood volume testing, orthostatic hypotension test, Krupp Fatigue Severity Scale test, SF–36 Short Form Health Status, and Modified Karnofsky testing. (ML0134, ML0138.) Magee also argued that Dr. Payne's requirement of objective indications of CFS was unreasonable. (ML0137.) Finally, Magee noted the numerous errors in MetLife's documentation. (ML0139.)

On March 8, 2007, Dr. Bell submitted additional documentation to support Magee's appeal including: (1) additional explanation about blood volume test results that showed that Magee suffers from idiopathic hypovolumia; (2) the results of a February 6, 2007 MRI scan of Magee's brain, which showed abnormal non-specific periventricular hyperintense white signals; (3) the results of a March 6–7, 2007 exercise test which demonstrated excellent effort but showed oxygen uptake much lower than that of a normal person; and (4) documentation showing low rennin levels in Magee's blood. (ML0195.) Dr. Bell also referenced published studies identifying each of these results as potential markers of CFS. (ML0194–ML0195.) He also explained the diagnostic criteria he applied, the basis for those criteria, and his experience in diagnosing and treating CFS. (ML0194.) Finally, Dr. Bell explained that he did not believe there was any evidence that Magee's symptoms were the result of depression. (ML0194.)

MetLife submitted Magee's file to a third reviewer, Dr. Joel Maslow, an infectious disease specialist, who also worked for NMR. He responded on March 22, 2007, concluding that Magee was not disabled. (ML0109–ML0113.) Dr. Maslow opined that Magee's claims of pain and cognitive dysfunction were not supported by objective findings from physical examination or neuro-psychiatric testing, and that the objective evidence of normal musculoskeletal findings and no cognitive dysfunction do not support his symptoms. (ML0112–ML0113.) Dr. Maslow stated that "a single SF–36 cannot be interpreted in isolation nor is there indication that this practitioner has experience to deliver or interpret this test." (ML0112.) As for the blood volume test, Dr. Maslow opined that the findings were "in isolation and without clear symptoms of orthostatsis." (ML0112.) Dr. Maslow also discounted the blood volume test because the report mistakenly referred to Magee as a female. (ML0111.) With regard to the orthostatic hypotension measurements, Dr. Maslow noted the limited number of measurements, claimed that a July 1, 2003 test was inconsistent with a July 7, 2003 reporting letter, and opined that the method of measurement used was incorrect. (ML0112.) While Dr. Maslow conceded "this was out of [his] area of expertise," he nevertheless opined "[t]he diagnosis of CFS is a diagnosis of exclusion, specifically requiring the exclusion of a diagnosis of depression," (ML0113), and suggested without concluding anything that Magee's symptoms were the result of depression rather than CFS. (ML0112.) Dr. Maslow omitted any reference to the two-day exercise test, the MRI scan, or the abnormal rennin levels. Dr. Maslow opined that "[f]rom an infectious disease perspective,

Mr. Magee does not meet the criteria for this syndrome." (ML0113.)

On April 13, 2007, Dr. Bell responded to Dr. Maslow's report submitting a copy of his Curriculum Vitae ("C.V."). (ML0087–ML0101.) The C.V. shows that while Dr. Bell is a board certified pediatrician with a practice in primary care pediatrics and family medicine, he also has extensive clinical and research experience with CFS. (ML0090–ML0091.) It also shows that Dr. Bell has (1) advised and chaired CFS committees at the U.S. Department of Health and Human Services and the National Institutes of Health (ML0090–ML0091); (2) been invited more than eighty time to lecture on CFS; (3) been invited to write reviews about CFS (including several on diagnosis of CFS) thirteen times; and (4) written thirteen published papers and five books about CFS including the book, "The Doctor's Guide to Chronic Fatigue Syndrome," published in 1994. (ML0091–ML0099.)

On May 7, 2007, MetLife denied Magee's appeal. (ML0078–ML0083.) MetLife first concluded based on Dr. Bell's opinion and because Magee was no longer seeing a mental health professional that Magee was no longer disabled due to depression. Second, MetLife determined that "although [Magee has] some medical conditions, these would not prevent [him] from performing [his] own occupation." (ML0082.) Specifically, MetLife found that "[Magee's] file lacked medical evidence of clinical findings that supported a severity of impairment that resulted in functional limitations." (ML0082.) MetLife continued that "[s]ince Chronic Fatigue is a diagnosis of exclusion, [his] file was reviewed from an infectious disease perspective and [he] did not meet the criteria for this syndrome." (ML0082.) MetLife concluded that Magee did not have a disability that was "substantiated

by the providers with comprehensive and specific information." (ML0082.) This action ensued.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Liberty Lobby, 477 U.S. at 255, 106 S.Ct. 2505.

### II. Standard of Review Under ERISA

 Where a benefit plan gives the administrator authority to determine eligibility for benefits or to construe the terms of the plan, the administrator's decision is reviewed for abuse of discretion. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). "Under [this] deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 132 (2d Cir.2008) (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir.1995)); see also Metro. Life Ins.

*Co. v. Glenn,* —— U.S. ——, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008). "Substantial evidence is 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] ... requires more than a scintilla but less than a preponderance.'" *Celardo v. GNY Auto. Dealers Health & Welfare Trust,* 318 F.3d 142, 146 (2d Cir.2003) (quoting *Miller v. United Welfare Fund,* 72 F.3d 1066, 1072 (2d Cir. 1995)).

■ "In reviewing the administrator's decision deferentially, a district court must consider whether the decision was based on a consideration of the relevant factors." *Miller,* 72 F.3d at 1072 (internal quotation marks omitted). Thus, courts must take "account of several different, often case-specific, factors, reaching a result by weighing them all together." *Glenn,* 128 S.Ct. at 2351. Courts undertaking arbitrary and capricious review should not "function as substitute plan administrators," and should therefore ordinarily limit their review to the administrative record. *Miller,* 72 F.3d at 1071. As one court explained:

> [A]lthough limited, review ... under the arbitrary and capricious standard is more than an [*sic.*] perfunctory review of the factual record in order to determine whether that record could conceivably support the decision to terminate benefits. Rather, such a review must include a "searching and careful" determination as to whether the conclusion reached by the administrator in view of the facts before it was indeed rational and not arbitrary.

*Rizk v. Long Term Disability Plan of Dun & Bradstreet Corp.,* 862 F.Supp. 783, 789 (E.D.N.Y.1994).

■ Finally, "[n]otwithstanding the deferential nature of the 'arbitrary and capricious' standard, courts have held that

ERISA guarantees that the plan's administrator, the fiduciary, must provide full and fair review of the decision to deny the claim." *Neely v. Pension Trust Fund of the Pension Hospitalization & Benefit Plan of the Elec. Indus.,* No. 00 Civ. 2013(SJ), 2004 WL 2851792, at *8 (E.D.N.Y. Dec. 8, 2004); *see also Marasco v. Bridgestone/Firestone, Inc.,* No. 02 Civ. 6257 (DLI), 2006 WL 354980, at *4 (E.D.N.Y. Feb. 15, 2006). "The purpose of [the full and fair review] requirement is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts," *Juliano v. The Health Maintenance Org. of N.J., Inc.,* 221 F.3d 279, 287 (2d Cir.2000) (citation and quotation marks omitted), and "to protect a plan participant from arbitrary and unprincipled decision making," *Grossmuller v. Int'l Union, UAW, Local 813,* 715 F.2d 853, 857 (3d Cir.1983). Courts must be mindful that "[t]he statute and the regulations were intended to help claimants process their claims efficiently and fairly [and] they were not intended to be used ... as a smoke screen to shield [the benefits plan] from legitimate claims." *Juliano,* 221 F.3d at 287 n. 1 (quoting *Richardson v. Cent. States Se. & Sw. Areas Pension Fund,* 645 F.2d 660, 665 (8th Cir.1981)).

### III. *Review of MetLife's Decision*

#### A. *Objective Evidence*

■ While "[t]he very concept of proof connotes objectivity," and so "it is hardly unreasonable for the administrator to require an objective component of such proof," *Maniatty v. Unumprovident Corp.,* 218 F.Supp.2d 500, 504 (S.D.N.Y.2002), "the subjective element of pain is an important factor to be considered in determining disability," *Connors v. Conn. Gen. Life Ins. Co.,* 272 F.3d 127, 136 (2d Cir.

2001). Moreover, "[c]hronic fatigue syndrome, like fibromyalgia, poses unique issues for plan administrators, since for both conditions, '[i]ts cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.' " *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 322 (7th Cir.2007) (quoting *Hawkins v. First Union Corp. Long–Term Disability Plan*, 326 F.3d 914, 916 (7th Cir.2003)); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433 (3d Cir.1997) (same); *see also Green–Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir.2003) ("Moreover, a growing number of courts, including our own, . . . have recognized that fibromyalgia is a disabling impairment and that there are no objective tests which can conclusively confirm the disease." (collecting cases)). Indeed, "diagnosing CFS is not sport for the short-winded." *Cook v. Liberty Life Assurance Co. of Boston*, 320 F.3d 11, 21 (1st Cir.2003) (citation and quotation marks omitted). This is because " 'there is no "dipstick" laboratory test for [CFS].' " *Cook*, 320 F.3d at 21 (quoting *Sisco v. HHS*, 10 F.3d 739, 744 (10th Cir. 1993)).

■ However, "[a] distinction exists . . . between the amount of fatigue or pain an individual experiences, which . . . is entirely subjective, and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured." *Williams*, 509 F.3d at 323; *see also Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 16 n. 5 (1st Cir.2003) ("While the diagnosis of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis."); *Cook v. N.Y. Times Co. Long–Term Disability Plan*, No. 02 Civ. 9154(GEL), 2004 WL 203111, at *4 (S.D.N.Y. Jan. 30, 2004) ("It is . . . reasonable to insist on some objective measure of claimants' capacity to work, so long as that measure is appropriate.").

MetLife apparently rejected Magee's claim because Magee failed to provide "objective evidence," establishing that he was suffering from a disabling impairment. However, in a Catch–22, MetLife acknowledges that there is no test for CFS. This circular reasoning suggests a flawed process that was arbitrary and capricious.[3] *See Sansevera v. E.I. DuPont de Nemours & Co.*, 859 F.Supp. 106, 113 (S.D.N.Y.1994) ("When confronted with an illness that is admittedly difficult to diagnose, it is unreasonable to demand evidence of a specific kind of impairment after experts have concluded that no definitive test for CFS has yet been discovered.").

## B. *Notice Provided*

■ While requiring plan participants to submit evidence of objective measures of functional limitations may be reasonable, participants must be informed of those requirements. *See Cook*, 2004 WL 203111, at *4. ERISA requires an administrator to inform plan participants of the information it seeks and the criteria to be applied. *See Juliano*, 221 F.3d at 287 ("In simple English, what [ERISA's regulations] call[ ] for is a meaningful dialogue between ERISA plan administrators and their beneficiaries.") (quoting *Booton v.*

---

**3.** While Dr. Payne's statement that there were no "objective measures to support functional limitations," could be construed as seeking evidence of Magee's limitations, rather than a diagnosis of CFS, this single sentence is inadequate notice of what evidence could meet a functional limitations requirement and MetLife never followed this reasoning in its rejections.

*Lockheed Med. Benefit Plan,* 110 F.3d 1461, 1463 (9th Cir.1997)).

MetLife's letters were ambiguous as to what MetLife sought from Magee. For example, MetLife told Magee in its final denial that his file "lacked medical evidence of clinical findings that supported a severity of impairment that resulted in functional limitations." It is unclear what constitutes "medical evidence of clinical findings" or how they would support "a severity of impairment", and how that in turn would result in functional limitations. *See Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 522 F.3d 863, 870 (9th Cir.2008) (describing a similarly inadequate MetLife denial letter and noting that "MetLife cannot be faulted for taking [the] instructions [for a meaningful dialog] too seriously."). The next sentence in that final denial letter is equally vague. MetLife acknowledges that CFS is a diagnosis of exclusion, but then states that Magee "does not meet the criteria for the syndrome." However, neither MetLife nor its consulting physicians ever explained what criteria they were applying, or what evidence would be necessary. *See Oliver v. Coca Cola Co.,* 497 F.3d 1181, 1197 (11th Cir.2007), *vacated in other part pending reh'g,* 506 F.3d 1316, *adhered to on reh'g,* 546 F.3d 1353 (11th Cir.2008) ("Indeed, it is unclear what additional 'objective' evidence of his pain [claimant] could have provided ... [t]ellingly, [the plan administrator] never identified what sort of 'objective' evidence it sought."). Accordingly, MetLife's inadequate notice is further indication that its decision was arbitrary and capricious.

## C. *Evidence Considered*

MetLife relies on the independent physician reviews by Dr. Payne and Dr. Maslow

to support its decision. However, both of these reports are seriously flawed.[4] For example, Dr. Payne agreed that Magee met the criteria for CFS, but then opined that there was no objective evidence to support his claims that he was in pain. However, if Magee suffered from CFS, that would be a source of his pain. Also, Dr. Payne did not consider the hypovolumia or orthostatic hypotension evidence in Magee's file, nor did he have an opportunity to consider the objective evidence that Magee submitted to support his appeal. Dr. Payne also did not have the opportunity to review the results of the two-day exercise test that, according to Dr. Bell, showed Magee's substantially impaired aerobic capacity—a finding that might objectively document that Magee suffered functional impairments that render him unable to work.

Dr. Maslow's report can be characterized as shoddy and incomplete. First, he ignored the MRI and exercise test, without explanation. Second, Dr. Maslow arbitrarily disregarded other evidence like the blood volume test. Dr. Maslow jettisoned that evidence solely because of a typographical error in the report that described Magee as a "female". He also disregarded the July 1, 2003 orthostatic intolerance test claiming it was inconsistent with a July 7, 2003 reporting letter. However, a comparison of the orthostatic intolerance testing (ML0471) and the letter (ML0448) shows they are entirely consistent. While Dr. Maslow stated that one SF–36 is inadequate, he ignored that Magee took the SF–36 and other fatigue questionnaire tests on three separate occasions with consistent results. Dr. Maslow also opined that none of the evidence sub-

---

4. Although Magee's file also contains Dr. Hopkins's review, MetLife did not rely on it.

*See Juliano,* 221 F.3d at 287.

mitted "standing alone" could support a finding that Magee was suffering from a disabling impairment. However, because there is no single "dipstick" test to diagnose CFS, dismissing a test because "standing alone" it does not establish CFS is irrational. Moreover, Dr. Maslow fails to explain how the blood volume test, abnormal brain MRI, SF–36, modified Karnofsky score, Krupp Fatigue and exercise test taken together fail to establish that Magee suffered from CFS.

Finally, MetLife's decision to terminate Magee's benefits because he was no longer depressed is contradicted by their own consultant's conclusion that Magee's pain was the result of depression, not CFS. Moreover, Dr. Maslow's opinion is inconsistent with Dr. Tariot and Dr. Gosline, the two psychiatrists who considered Magee's the case. Thus, there are serious flaws in the evidence on which MetLife relies. *See Buffonge v. Prudential Ins. Co. of Am.,* 426 F.3d 20, 30 (1st Cir.2005) ("An administrator's decision must be reasoned to survive arbitrary and capricious review ... and we cannot say that a decision based on multiple pieces of faulty evidence was reasoned."); *see also Oliver,* 497 F.3d at 1199 ("By relying on [the independent physician consultant's] flawed peer review as a basis for denying [claimant's] LTD benefits claim and by failing to review relevant medical evidence that supported [claimant's] claim, [the plan administrator] acted arbitrarily and capriciously."); *Neely,* 2004 WL 2851792, at *10 ("[T]he plan's fiduciary must consider all pertinent information reasonably available to him.").

### D. *Social Security*

■ While "the [Social Security Administration's] determination [does] not bind either the ERISA Plan or the district court[,] it does not follow that the district court [is] obligated to ignore the SSA's determination ...." *Paese v. Hartford Life Ins. Co.,* 449 F.3d 435, 442–43 (2d Cir.2006); *see also Billinger v. Bell Atl. Corp.,* 240 F.Supp.2d 274, 285 (S.D.N.Y. 2003). Here, MetLife failed to even consider Magee's successful Social Security determination, which found Magee's subjective complaints credible and supported by objective evidence. MetLife overlooked the Social Security proceeding despite the fact that the Kodak LTD Plan required Magee to apply for those benefits, which substantially reduced Kodak's financial obligations. *See Ladd v. ITT Corp.,* 148 F.3d 753, 756 (7th Cir.1998) (noting the failure to consider Social Security findings that reduce a plan's financial obligations "cast additional doubt on the adequacy of the[ ] evaluation of [Plaintiff's] claim"); *see also Mikrut v. Unum Life Ins. Co. of Am.,* No. 03 Civ. 1714(SRU), 2006 WL 3791417, at *34–35 (D.Conn. Dec. 21, 2006). MetLife now points to certain facts that were rejected by the ALJ. However, this Court cannot consider MetLife's post-hoc rationalizations when it failed to consider the Social Security determination. *See Juliano,* 221 F.3d at 287 ("We will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation."). Thus, MetLife's failure to even consider the findings of the Social Security Administration further supports a finding of arbitrariness. *See Glenn,* 128 S.Ct. at 2352.

### E. *Treating Physician*

■ "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's explanation." *Black & Decker*

*Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). However, "[p]lan administrators ... may not refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Nord*, 538 U.S. at 834, 123 S.Ct. 1965.

While MetLife was not required to credit Dr. Bell's conclusions, its refusal to explain why it was crediting some of his opinions and not others suggests arbitrary decision making. For example, MetLife relied on Dr. Bell's conclusion that Magee was no longer depressed as a basis to terminate his benefits but refused to credit any of his other conclusions—without explanation. *See Glenn v. MetLife Ins. Co.*, 461 F.3d 660, 674 (6th Cir.2006) *aff'd Glenn*, —— U.S. ——, 128 S.Ct. 2343 ("In denying benefits, [MetLife] offered no explanation for crediting a brief form filled out by [the participant's doctor] while overlooking his detailed reports."). Thus, this further suggests that MetLife's decision is arbitrary.

### F. *Summary*

Weighing the factors discussed above, MetLife's erroneous objective evidence requirement, its inadequate notice, the flawed evidence MetLife relied on, the failure to consider the objective evidence Magee presented, the failure to consider Social Security's positive decision, and the inconsistent crediting of opinions—this Court finds that MetLife's decision was arbitrary and capricious. Accordingly, Magee's motion for summary judgment vacating MetLife's benefits decision is granted and MetLife's motion for summary judgment upholding it is denied.

### IV. *MetLife's Request for Reimbursement*

 The Kodak LTD Plan provides that any benefits payable under the plan must be offset by Social Security disability payments, and participants must repay any overpayments based on retroactive awards of benefits. ERISA protects the administrator's right to obtain equitable relief to enforce the terms of the Kodak LTD Plan. *See* 29 U.S.C. § 1132(a)(3)(B); *Aitkins v. Park Place Entm't Corp. Employee Benefit Plan*, No. 06 Civ. 481(JFB), 2008 WL 820040, at *24 (E.D.N.Y. Mar. 25, 2008).

Magee signed a Reimbursement Agreement, requiring him to make retroactive payments for benefits paid by the Social Security Administration. He has returned a portion of this overpayment, but is obligated to remit the remaining amount to MetLife. Accordingly, MetLife's motion for summary judgment on its counterclaim is granted. However, as provided below that amount may be offset by the reasonable attorney's fee which this Court awards to Magee.

### V. *Remedy*

#### A. *Remand*

 "[I]f upon review, a district court concludes that the [Plan Administrator's] decision was arbitrary and capricious, it must remand to the [Plan Administrator] with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting a denial of the claim or remand would otherwise be a useless formality." *Miller*, 72 F.3d at 1071 (internal quotations omitted); *see also Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 51 n. 4 (2d Cir.1996) (remand of an ERISA action seeking benefits is inappropriate "where the difficulty is not that the administrative record is incomplete but that a denial of benefits based on the record was unreasonable."). While this is a close case, because some of the evidence—e.g., the exercise test MRI—was

never even considered by MetLife, this Court remands this case for reconsideration. To insure effective review, Magee may supplement his file with any additional evidence and MetLife shall treat Magee's claim as a new claim affording no deference to the initial adverse determination. *See Cook*, 2004 WL 203111, at *20.

### B. *Attorney's Fees*

■ "In an ERISA action, 'the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.'" *Krizek v. CIGNA Group Ins.*, 345 F.3d 91, 102 (2d Cir.2003) (quoting 29 U.S.C. § 1132(g)(1)). "In determining whether to grant such an award, courts in the Second Circuit must consider: '(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.'" *Cook*, 2004 WL 203111, at *20 (quoting *Krizek*, 345 F.3d at 102).

■ In this case, even though Magee is not entitled to reinstatement of benefits on summary judgment, all five factors weigh strongly in his favor. First, MetLife wrongly denied Magee the opportunity for full and fair review, forcing him to bring this lawsuit. Second, as this Memorandum and Order makes clear MetLife's review process was flawed. Indeed, MetLife has been sharply criticized for similar failings in this district. *See, e.g, Cook*, 2004 WL 203111. MetLife should be able to satisfy any award, and the relative strength of the parties' positions is not in doubt. Accordingly, this Court exercises its informed discretion to grant Magee an award of reasonable attorney's fees and costs for filing this action and for those branches of these motions on which Magee prevailed. In the event that the parties cannot agree on reasonable attorney's fees, Magee shall submit documentation sufficient for this Court to determine the amount of the award by July 22, 2009. MetLife can offset any attorney's fees award against the unreimbursed overpayments of benefits owed by Magee to MetLife.

### CONCLUSION

For the foregoing reasons, Defendant Metropolitan Life Insurance Company's motion for summary judgment affirming its determination (Docket No. 11) is denied. Plaintiff John Magee's motion for summary judgment (Docket No. 15) is granted in part. Defendant's determination is vacated, and the case is remanded for reconsideration in view of this Memorandum and Order. Defendant's motion for summary judgment on its counterclaim is granted. Judgment will be entered accordingly.

This Court determines that costs and attorney's fees are warranted. Accordingly, Magee shall submit an application documenting the amount of costs and fees demanded in accordance with Fed.R.Civ.P. 54(d)(2)(B). The Clerk of the Court is directed to mark this case closed.

SO ORDERED.